LEWIS *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF ARKANSAS.

No. 1018. Argued October 28, 1892. — Decided December 5, 1892.

In trials for felonies, it is not in the power of the prisoner, either by himself or his counsel, to waive the right to be personally present during the trial.

The making of challenges is an essential part of the trial of a person accused of crime, and it is one of his substantial rights to be brought face to face with the jurors when the challenges are made.

Though no specific exception was taken in this case by the prisoner, based upon the fact that he was called upon to challenge jurors not before him, a general exception, taken to the action of the court in prescribing the method of procedure, was sufficient.

Where no due exception to the language of the court in instructing the jury is taken at the trial, this court cannot consider whether the trial court went beyond the verge of propriety in its instructions.

On the trial of the case, after the accused had pleaded not guilty to the indictment, the court directed two lists of thirty-seven qualified jurymen to be made out by the clerk, one to be given to the district attorney and one to the counsel for the defendant, and further directed each side to proceed with its challenges, independently of the other, and without knowledge on the part of either as to what challenges had been made by the other. To this method of proceeding, the defendant at the time excepted, but was required to proceed to make his challenges. He challenged twenty persons from the list of thirty-seven persons from which he made his challenges, but in doing so he challenged three jurors who were also challenged by the government. The government challenged from the list of thirty-seven persons five persons, three of whom were the same persons challenged by the defendant. This fact was made to appear from the lists of jurors used by the government in making its

challenges and the defendant in making his challenges. To the happening of the fact that both parties challenged the same three jurors, the defendant at the time objected, but the court overruled the objection, and directed the jury to be called from the said two lists, impanelled and sworn, to which the defendant at the time excepted. *Held,* that there was substantial error in this proceeding and the judgment of guilty must be reversed.

THE case is stated in the opinion.

*Mr. A. H. Garland* and *Mr. H. J. May* for plaintiff in error.

*Mr. Assistant Attorney General Parker* for defendant in error.

MR. JUSTICE SHIRAS delivered the opinion of the court.

This was a writ of error sued out to review a judgment of the Circuit Court of the United States for the Western District of Arkansas, imposing a sentence of death upon Alexander Lewis, plaintiff in error, for the murder of one Benjamin C. Tarver, at the Cherokee Nation, in the Indian country.

It appears by the record that on the trial of the case, and after the accused had pleaded not guilty to the indictment, the court directed two lists of thirty-seven qualified jurymen to be made out by the clerk, one to be given to the district attorney and one to the counsel for the defendant, and that the court further directed each side to proceed with its challenges, independent of the other, and without knowledge on the part of either as to what challenges had been made by the other.

It further appears by the record that to this method of proceeding in that regard, the defendant *at the time excepted,* but was required to proceed to make his challenges; that he challenged twenty persons from the list of thirty-seven persons from which he made his challenges, but in doing so he challenged three jurors who were also challenged by the attorney for the government.

It further appears that the government, by its district attorney, challenged from the list of thirty-seven persons five persons, three of whom were the same persons challenged by the defendant, and that this fact was made to appear from the lists of jurors used by the government in making its challenges and the defendant in making his challenges.

To the happening of the fact that both parties challenged the same three jurors, the defendant at the time objected, but the court overruled the objection, and directed the jury to be called from the said two lists, impanelled and sworn, to which the defendant at the time excepted.

The assignments of error ask us to consider the validity of the method of exercising his rights of challenge, imposed upon the defendant by the order of the court, and also the propriety of the instruction given by the court to the jury, on the subject of the defence of an alibi, by giving prominence to the cautionary rules by which they should weigh this class of testimony, and particularly in saying to the jury that it was a defence often resorted to, and often attempted to be sustained and made effective by fraud, subornation and perjury.

A leading principle that pervades the entire law of criminal procedure is that, after indictment found, nothing shall be done in the absence of the prisoner. While this rule has, at times and in the cases of misdemeanors, been somewhat relaxed, yet in felonies, it is not in the power of the prisoner, either by himself or his counsel, to waive the right to be personally present during the trial. "It would be contrary to the dictates of humanity to let him waive the advantage which a view of his sad plight might give him by inclining the hearts of the jurors to listen to his defence with indulgence." *Prine* v. *The Commonwealth*, 18 Penn. St. 103, 104, per Gibson, C. J. And it appears to be well settled that, where the personal presence is necessary in point of law, the record must show the fact. Thus, in a Virginia case, *Hooker* v. *The Commonwealth*, 13 Grat. 763, 766, the court observed that the record showed that, on two occasions during the trial, the prisoner appeared by attorney, and that there was nothing to show that he was personally present in court on either day,

and added, " This is probably the result of mere inadvertence in making up the record, yet this court must look only to the record as it is. . . . It is the right of any one, when prosecuted on a capital or criminal charge, 'to be confronted with the accusers and witnesses,' and it is within the scope of this right that he be present, not only when the jury are hearing his case, but at any subsequent stage when anything may be done in the prosecution by which he is to be affected." Thereupon the judgment was reversed. And in the case of *Dunn* v. *Commonwealth*, 6 Penn. St. 384, it was held that the record in a capital case must show affirmatively the prisoner's presence in court, and that it was not allowable to indulge the presumption that everything was rightly done until the contrary appears. *Ball* v. *United States*, 140 U. S. 118 is to the same effect.

In *Hopt* v. *Utah*, 110 U. S. 574, 578, 579, it is said: " The argument in behalf of the government is that the trial of the indictment began after and not before the jury was sworn; consequently, that the defendant's personal presence was not required at an earlier stage of the proceedings. Some warrant, it is supposed by counsel, is found for this position, in decisions construing particular statutes in which the word 'trial' is used. Without stopping to distinguish those cases from the one before us, or to examine the grounds upon which they are placed, it is sufficient to say that the purpose of the foregoing provisions of the Utah Criminal Code is, in prosecutions for felonies, to prevent any steps being taken, in the absence of the accused and after the case is called for trial, which involve his substantial rights. The requirement is, not that he must be personally present at the trial by the jury, but ' at the trial.' The code, we have seen, prescribes grounds for challenge by either party of jurors proposed. And provision is expressly made for the 'trial' of such challenges, some by the court, others by triers. The prisoner is entitled to an impartial jury composed of persons not disqualified by statute, and his life or liberty may depend upon the aid which, by his personal presence, he may give to counsel and to the court and triers, in the selection of jurors. The necessities of the defence may

not be met by the presence of his counsel only. For every purpose, therefore, involved in the requirement that the defendant shall be personally present at the trial, where the indictment is for a felony, the trial commences at least from the time when the work of empanelling the jury begins." And further: ". We are of opinion that it was not within the power of the accused or his counsel to dispense with the statutory requirement as to his personal presence at the trial. The argument to the contrary necessarily proceeds upon the ground that he alone is concerned as to the mode by which he may be deprived of his life or liberty, and that the chief object of the prosecution is to punish him for the crime charged. . But this is a mistaken view as well of the relations which the accused holds to the public as of the end of human punishment. The natural life, says Blackstone, 'cannot legally be disposed of or destroyed by any individual, neither by the person himself, nor by any other of his fellow creatures, merely upon their own authority.' 1 Bl. Com. 133. The public has an interest in his life and liberty. Neither can be lawfully taken except in the mode prescribed by law. That which the law makes essential in proceedings involving the deprivation of life or liberty cannot be dispensed with or affected by the consent of the accused, much less by his mere failure, when on trial and in custody, to object to unauthorized methods." So, too, in the case of *Schwab* v. *Berggren*, 143 U. S. 442, 448, this language of the court in *Hopt* v. *Utah* is cited and approved.

In the case of *Dyson* v. *Mississippi*, 26 Mississippi, 362, 383, it was said: "It is undoubtedly true that the record must affirmatively show those indispensable facts without which the judgment would be void — such as the organization of the court; its jurisdiction of the subject-matter and of the parties; that a cause was made up for trial ; that it was submitted to a jury sworn to try it (if it be a case proper for a jury); that a verdict was rendered, and judgment awarded. Out of abundant tenderness for the right secured to the accused by our Constitution, to be confronted by the witnesses against him, and to be heard by himself or counsel, our court has

gone a step further, and held that it must be shown by the record that the accused was present in court pending the trial. This is upon the ground of the peculiar sacredness of this high constitutional right. It is also true, as has been held by this court, 'that nothing can be presumed for or against a record, except what appears substantially upon its face.'" Continuing, the court said: "This rule has reference to those indispensable requisites necessary to the validity of the record as a judicial proceeding."

As already said, the record shows that at the trial of the case the court directed two lists of thirty-seven qualified jurymen to be made out by the clerk, and one to be given to the district attorney and one to the counsel for the defendant; and the court further directed each side to proceed with its challenges, and without knowledge on the part of either as to what challenges had been made by the other. Although the record states that after the challenges the twelve jurors who remained were sworn, yet it clearly appears from the whole record, and the lists therein referred to, that after the challenges there remained, not only twelve, but fifteen jurors, and that by the mode adopted, which required the prisoner to challenge by list, he exhausted some of his challenges by challenging jurors at the foot of the list, and who were never reached to be sworn as jurors in the case. And the record does not disclose that, at the time the challenges were made, the jury had been called into the box, nor that they or the prisoner were present at the time the challenges were made. It does, indeed, appear that the clerk called the entire panel of the petit jury, but it does not appear that, when the jury answered to said call, they were present so that they could be inspected by the prisoner; and it is evident that the process of challenging did not begin until after said call had been made. We do not think that the record affirmatively discloses that the prisoner and the jury were brought face to face at the time the challenges were made, but we think that a fair reading of the record leads to the opposite conclusion, and that the prisoner was not brought face to face with the jury until after the challenges had been made and the selected

jurors were brought into the box to be sworn. Thus reading the record, and holding as we do that making of challenges was an essential part of the trial, and that it was one of the substantial rights of the prisoner to be brought face to face with the jurors at the time when the challenges were made, we are brought to the conclusion that the record discloses an error for which the judgment of the court must be reversed.

The right of challenge comes from the common law with the trial by jury itself, and has always been held essential to the fairness of trial by jury. As was said by Blackstone, and repeated by Mr. Justice Story: "In criminal cases, or at least in capital ones, there is, *in favorem vitæ*, allowed to the prisoner an arbitrary and capricious species of challenge to a certain number of jurors, without showing any cause at all; which is called a *peremptory* challenge; a provision full of that tenderness and humanity to prisoners, for which our English laws are justly famous. This is grounded on two reasons: 1. As every one must be sensible, what sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another; and how necessary it is that a prisoner (when put to defend his life) should have a good opinion of his jury, the want of which might totally disconcert him; the law wills not that he should be tried by any one man against whom he has conceived a prejudice even without being able to assign a reason for such his dislike. 2. Because, upon challenges for cause shown, if the reason assigned prove insufficient to set aside the juror, perhaps the bare questioning his indifference may sometimes provoke a resentment; to prevent all ill consequences from which, the prisoner is still at liberty, if he pleases, peremptorily to set him aside." 4 Bl. Com. 353; *United States* v. *Marchant*, 4 Mason, 158, 160, 162; and 12 Wheat. 480, 482. See, also, Co. Lit. 156b; Termes de la Ley, *voc.* Challenge, 2 Hawk. c. 43, § 4; *Regina* v. *Frost*, 9 Car. & P. 129, 137; *Hartzell* v. *Commonwealth*, 40 Penn. St. 462, 466; *State* v. *Price*, 10 Rich. (Law,) 351, 375.

There is no statute of the United States which prescribes the method of procedure in empanelling jurors in criminal

cases, and it is customary for the United States courts in such cases to conform to the methods prescribed by the statutes of the States. In the present instance, the method prescribed by the statutes of Arkansas was not followed, nor does it appear that there exists any general rule on the subject in the Circuit Court of the Western District of Arkansas. While the court in the present instance did not exceed its jurisdiction in directing the empanelling of the jury by a method different from that prescribed by the state statute, and while we do not feel called upon to make suggestions as to the proper practice to be adopted by the Circuit Courts in empanelling juries in criminal cases, yet obviously all rules of practice must necessarily be adapted to secure the rights of the accused; that is, where there is no statute, the practice must not conflict with or abridge the right as it exists at common law. In the trial of *Jeremiah Brandreth*, 32 How. St. Tr. 755, 771, where a question arose as to the order of challenge of jurors in a capital case, it was said by Mr. Justice Abbott: "Having attended, I believe, more trials of this kind than any other of the judges, I would state that the uniform practice has been, that the juryman was presented to the prisoner or his counsel that they might have a view of his person; then the officer of the court looked first to the counsel for the prisoner to know whether they wished to challenge him; he then turned to the counsel for the crown, to know whether they challenged him, and if neither of them made any objection, the oath was administered." In *Townley's Case*, 18 How. St. Tr. 347, 348, the prisoner's counsel moved that before any juryman should be brought to the book, the whole panel might be called over once in the prisoner's hearing, that he might take notice who did or who did not appear, which they said would be a considerable help to him in taking his challenges. This was done by order of the court.

In the case of *Lamb* v. *The State*, 36 Wisconsin, 424, where it did not appear affirmatively by the record that the panel of jurors in respect to which the prisoner had the right of peremptory challenge, was present in the view of the prisoner; but where the members of the jury were called into the box

one at a time, and either challenged or sworn, and to which method the prisoner excepted, this was held reversible error, and the court said: "We cannot but agree with the learned counsel for the plaintiff in error, that this mode of empanelling the jury largely impaired the right of peremptory challenge, essential in contemplation of law to the impartiality of the trial. For it is, as Blackstone says, an arbitrary and capricious right; and it must be exercised with full freedom, or it fails of its full purpose. The mode adopted gave no opportunity for comparison and choice between jurors, and little opportunity for observance of each juror, apparently essential to the exercise of a right so visionary and fanciful."

In the case of *Hopt* v. *Utah*, already cited, it was held that the trial by triers, appointed by the court, of challenges of proposed jurors in felony cases, must be had in the presence as well of the court as of the accused, and that such presence of the accused cannot be dispensed with. In that case the triers took the juror from the court-room into a different room, and tried the grounds of challenge out of the presence as well of the court as of the defendant and his counsel, and it was held by this court that it was error which vitiated the verdict and judgment to permit the trial of challenges to take place without the presence of the accused; and this, although the accused failed to object to the retirement of the triers from the court-room, or to the trial of the several challenges in his absence. The record in this case discloses that the prisoner objected and took due exception to the orders of the court directing the method of taking challenges. It is true that no specific exception was taken by the prisoner, based on the stated fact that he was called upon to challenge jurors not before him, but we think that the general exception taken to the action of the court in prescribing the method of procedure was sufficient.

Another assignment averred error in the court in its selection of the jury, in that the defendant was required to make his challenges without first knowing what challenges the government's attorney had made, and thus challenged three jurors who were also challenged by the government, whereby he was

deprived of three of his challenges, contrary to law. This assignment of error is based on a specific exception taken at the time by the prisoner, and in this respect it differs from the case of *Alexander* v. *United States,* 138 U. S. 353, where the same error was assigned, and was not considered by this court because it had not been properly excepted to at the trial. As we have already said, we do not deem it our duty to prescribe in this opinion rules to regulate the discretion of the Circuit Courts in the empanelling of jurors in criminal cases. Perhaps the preferable course would be for the Circuit Courts to adopt the methods prescribed by the statutes of the States, because such methods are familiar to the bar and the people of the States. If, however, the Circuit Courts choose to deal with such matters by rules of their own, we think it essential that such rules should be adapted to secure all the rights of the accused. It does not appear in the present case that the prisoner made any demand to challenge any of the jury beyond the twenty allowed by the Revised Statutes. In fact, it does not clearly appear which side made the first challenges, or that the defendant had not exhausted his challenges before the government challenged the three jurors in question. If it were a fact that the defendant had made his twenty challenges before the government had challenged these three men, it is difficult to see how his rights were prejudiced by the action of the district attorney, but we should hesitate to affirm this judgment upon a record giving us so little information as to the history of the trial in these respects.

The only other error assigned which calls for notice is the one objecting to the language used by the court when cautioning the jury in respect to the testimony bearing on the defence of an alibi. Whether the language of the learned judge went beyond the verge of propriety, we are not called upon to consider, as no due exception was taken at the trial, and no opportunity was, therefore, given the court to modify the charge.

The objection to the language used, urged on the motion for a new trial, cannot be regarded as equivalent to an exception at the trial. Because, however, of the error into which the

court fell, in directing secret challenges to be made, and not in the presence of the prisoner and the jurors, the judgment of the court below must be reversed and the case remanded for a new trial.

*Judgment reversed.*

MR. JUSTICE BREWER, with whom concurred MR. JUSTICE BROWN, dissenting.

I dissent from the opinion and judgment of the court in this case. Where the question is as to the inferences to be drawn from a record, it is well to have its very language before us. The entire record bearing upon the matters in controversy consists of a single journal entry and a portion of the bill of exceptions. The journal entry is as follows: .

"TUESDAY MORNING, *October 20th,* 1891.

" (Caption omitted.)

" On this day come the United States of America, by Wm. H. H. Clayton, Esq., attorney for the Western District of Arkansas, and come the said defendant in custody of the marshal and by his attorneys, Mess. Barnes & Reed, and it appearing from the returns of the marshal that the said defendant has been served with a duly certified copy of the indictment in this cause and a full and complete list of the witnesses in this cause, and that he has also been served with a full and complete list of the petit jury, as selected and drawn by the jury commissioners for the present term of this court, more than two entire days heretofore, and having heretofore had hearing of said indictment, and pleaded not guilty thereto, it is, on motion of the plaintiff by its attorney, ordered that a jury come to try the issue joined, whereupon the clerk called the entire panel of the petit jury, and, after challenge by both plaintiff and defendant, the following were selected for the trial of this cause:

" Geo. A. Bryant, John W. Clayborn, Henry P. Dooly, James O. Eubanks, John A. Fisher, Henry P. Floyd, Geo. W. Hobbs, Hugh F. Mullen, Jno. D. McCleary, Obadiah C. Rich-

mond, Joseph Stafford, Henry B. Wheeler, twelve good and lawful men of the district aforesaid, duly selected, empanelled, and sworn to try the issue joined and a true verdict render according to the law and the evidence; and after hearing a portion of the evidence, and there not being time, to further progress in the trial of this cause, they were put in charge of a sworn bailiff of this court."

The recital in the bill of exceptions is in these words :

"Be it remembered that on the trial of the above-entitled cause the court directed two lists of 37 qualified jurymen to be made out by the clerk, and one given to the district attorney and one to the counsel for the defendant; and the court further directed each side to proceed with its challenges independent of the other and without knowledge on the part of either as to what challenges had been made by the other.

"To which method of proceeding in that regard defendant at the time excepted, but was required to proceed to make his challenges, and he challenged 20 persons from the list of 37 persons, from which he made his challenges, but in doing so he challenged 3 jurors who were also challenged by the attorney for the government, to wit, James H. Hamilton, Britton Upchurch, and James P. Mack. The government, by its district attorney, challenged from the list of 37 jurors 5 persons. In making its challenges the same three persons as those challenged by the defendant, to wit, James H. Hamilton, Britton Upchurch, and James P. Mack, were challenged by the government, as appears from the lists of jurors used by the government in making its challenges and the defendant in making his challenges.

"The 12 persons who were left of the panel of 37, after both sides had made their respective challenges, were the ones selected to try and who did try the case.

"To the happening of the fact that both parties challenged the same three jurors, the defendant at the time objected, but the court overruled the objection and directed the jury to be called from the said two lists, empanelled and sworn, to which the defendant at the time excepted."

·In addition, in the bill of exceptions are found the two lists of jurors, given the one to the government and the other to the defendant. Upon this record the case turns. We look to the journal entry for a recital of the facts necessary to constitute a legal trial. That recital may be in general terms, but still should affirmatively show everything essential to a valid criminal trial. This journal entry clearly affirms the presence of the defendant. The language is: "Come the said defendant in custody of the marshal," etc. Such presence, having been once stated will be presumed to have continued through the entire day, unless the contrary is shown. It never has been even suggested that the journal should contain at the statement of each separate proceeding of the day a fresh recital of the personal presence of the defendant. In *Jeffries* v. *The Commonwealth*, 12 Allen, 145, 154, it was said: "Nor is it necessary that the record should in direct terms state that the party was personally present at the time of the rendition of the verdict and during all the previous proceedings of the trial. However necessary it may be that such should have been the fact, it is not necessary to recite it in the record. The record shows that he was present at the arraignment and present to receive his sentence." "When the record shows that the defendant was in court at the opening of the session the presumption is that he continued in court during the entire day, and this presumption has been extended to the whole trial." Wharton's Cr. Pl. and Pr. § 551; *State* v. *Lewis*, 69 Missouri, 92; *Kie* v. *United States*, 27 Fed. Rep. 351; *Cluverius* v. *Commonwealth*, 81 Virginia, 787; *Folden* v. *State*, 13 Nebraska, 328; *Irvin* v. *State*, 19 Florida, 872; *People* v. *Sing Lum*, 61 California, 538; *People* v. *Jung Qung Sing*, 70 California, 469; *New Mexico* v. *Yarberry*, 2 New Mexico, 391. No claim, therefore, can be successfully presented that anything transpiring on that day took place in the absence of the defendant.

The same journal entry further recites, that "the clerk called the entire panel of the petit jury, and, after challenge by both plaintiff and defendant," the jury was selected. Where the general term is used, as here, "challenge," it means

all challenges. It is used in its comprehensive sense. It·
unnecessary to subdivide, and say after challenge to the array,
challenges for cause, and peremptory challenges; the single
general word is sufficient. But this journal entry does not
stop with this. After naming the jurors, and describing them ·
as good and lawful men, it adds, "duly selected, empanelled
and sworn." Such will be found the uniform formula of
journal entries. In *Kie* v. *United States*, 27 Fed. Rep. 351,
357, a case taken on error to the Circuit Court, Judge Deady
observes: " The record simply states in the usual way, when
the case was called for trial, a jury came, and was duly em-
panelled and sworn." *Potsdamer* v. *The State*, 17 Florida, 895;
*Rash* v. *The State*, 61 Alabama, 89. In Wharton's Criminal ·
Pleading and Practice, sec. 779 *a* (9th ed.) the author says :
" Thus when the record shows empanelling and swearing it
will be presumed, in error, that the swearing was in conformity
with the law, and the empanelling was regular." It is hardly
necessary to refer to the familiar fact that in criminal, as in
civil cases, the presumption is in favor of the regularity of the
proceedings in the trial court, and that error must affirma-
tively appear. Powell on Appellate Proceedings, p. 326, sec.
50; Wharton's Cr. Pleading and Practice, sec. 779 *a*, (9th ed.)
and cases cited in note. I take it, therefore, that it is not
open to doubt that if nothing was before us except the journal
entry there would be no error apparent in the proceedings in
regard to the jury.

How does the matter stand from the bill of exceptions? A
bill of exceptions is prepared by the party, and being prepared
by him, he may state, and ought to state, only those facts
which present the very question he desires to raise. If the
objection is to a ruling on the admission of testimony, he
should state only that testimony and enough of the case to
show its relevancy. It would be absurd to require him to set
out all the testimony, or to state in terms that there was no
objection to the balance. As was said in *Lincoln* v. *Claflin*, 7
Wall. 132, 136: " A bill of exceptions should only present the
rulings of the court upon some matter of law, — as upon the
admission or exclusion of evidence, — and should contain only

so much of the testimony, or such a statement of the proofs made or offered, as may be necessary to explain the bearing of the rulings upon the issues involved." If he objects to a specific portion of a charge, he should state only that portion. Putting in the whole charge is clearly against rule 4 of this court, and has been explicitly condemned. *United States* v. *Rindskopf*, 105 U. S. 418. Indeed, the single function of a bill of exceptions is to bring upon the record so much of the proceedings as will disclose the precise question which the party desires to have ruled upon, and, when prepared by counsel and presented to the court, if it states the facts truly, the judge ought to sign it; and it is unnecessary for it to set forth affirmatively that there was no other error in the proceedings, or to state all the facts of the case in order to disclose that there was no other error. Bearing in mind this, which is confessedly the scope and purpose of a bill of exceptions, I notice that in this bill not a word is said about the absence of the jurors from the box, the personal presence or absence of the defendant, or whether the defendant was brought face to face with the jurors. If he had any fault to find in respect to these matters, the facts in respect thereto should have been explicitly stated. That he made no claim of wrong therein, is evident from the fact that he does not mention them. Examining the language of the bill of exceptions carefully, it states that two lists were given, one to plaintiff and one to defendant; and the court directed them to proceed with their challenges, each separately of the other, and without knowledge of what challenges were being made by the other. Then follow the exceptions, "to which method of proceeding in that regard defendant at the time excepted." I respectfully submit that language could not be used which makes clearer the fact that the objection ran alone to the fact that each party was required to make its challenges independently of the other, and without knowledge of what the other was doing. It is not simply said "to which method of proceeding," but as if to limit carefully to the particular matter, it says "to which method of proceeding in that regard." And at the close of the recitals it is further stated, " to the happen-

ing of the fact that both parties challenged the same three jurors, the defendant at the time objected." This is all which in any way tends to show that there was anything wrong in the matter of challenges, or that anything took place in the absence of the defendant.

Again, if the defendant had taken no exceptions to these proceedings, it is settled that this court would not inquire as to whether there was error in them. In *Alexander* v. *United States*, 138 U. S. 353, 355, a case coming from the same district, the precise state of facts in respect to the empanelling of the jury appeared, but without any exceptions. The response made by the court to the assignment of error was in these words: "The decisive answer to this assignment is, that the attention of the court does not seem to have been called to it until after the conviction, when the defendant made it a ground of his motion for a new trial. It is the duty of counsel seasonably to call the attention of the court to any error in empanelling the jury, in admitting testimony, or in any other proceeding during the trial, by which his rights are prejudiced, and in case of an adverse ruling to note an exception." Of course, then, if the matters are not vital to the trial, and may be waived by failure to object, as thus decided, clearly the defendant can take advantage of nothing to which he does not except. Hence, supposing that after the foregoing recital in the bill of exceptions there had appeared further recitals showing various irregularities in respect to the challenges, sufficient of themselves, if excepted to, to compel reversal, but with no following exception, clearly, under the rule laid down in *Alexander* v. *The United States*, we should have been compelled to ignore them. Surely then, when the exception runs to a specific matter, it cannot be broadened so as to extend to a matter, which is confessedly not stated, but is only inferred as probable from what is stated. In short, when the journal entry, which is of itself a part of the record, and which is the court's statement of what took place, recites the personal presence of the defendant and the full exercise of the right of challenge in language which is the ordinary formula of journal entries, and which has been uniformly regarded as

sufficient, to infer from the bill of exceptions prepared by the defendant, whose purpose is only to present the facts bearing upon the particular error alleged by him, and which only specifies in terms a single act to which exception is taken, to wit, the fact that plaintiff and defendant were compelled to challenge peremptorily, without knowledge of the other's challenges, that any challenges took place in the absence of the defendant, and to hold that an exception which is precise to a particular matter can be broadened so as to include other matters not specified, and thereupon to set aside a judgment of guilty solemnly rendered, seems to me to overturn established rules governing appellate proceedings, to destroy confidence in courts, and to work great wrong to the public.

Further than this, in the brief of counsel for the defendant there is no claim that the jury were not present in the box, face to face with the defendant, when he was called upon to make his challenges. The only points they make in respect to the matter are that the mode of designating the jury was not recognized by the statutes of the State of Arkansas, nor in conformity with any rule prescribed by Congress; and that by reason of the fact that three jurors were challenged by both the government and defendant, the latter was really deprived of three peremptory challenges.

Now, if it should prove to be the case — as it seems to me is not only possible but probable — that the defendant was in fact present in the court-room during all the challenges; that the entire panel of jurors was called into the box before him; that in their presence he was allowed and received all the challenges for cause he desired to make; and that only after a full inspection of the jury, and a questioning of each one so far as was desired, were the lists placed in the hands of the respective counsel for peremptory challenges, will not the ordinary citizen believe that substantial justice would have been done if this court had omitted to read into the record something which is not expressly stated therein, which defendant's counsel did not claim to have happened, and which did not in fact happen.

So far as respects the matter of contemporaneous challeng-

ing, at common law, and generally where no order is prescribed by statute, the defendant is required to make all his challenges before the government is called upon for any. In that aspect of the law, contemporaneous challenging works to the injury of the government rather than to that of the defendant. Further, in the only case in which the precise question has been presented, *State* v. *Hays*, 23 Missouri, 287, cited approvingly in *Turpin* v. *The State*, 55 Maryland, 462, the decision was in favor of the validity of such manner of challenge. In view of the discretion which in the absence of statute is confessedly vested in the trial court as to the manner of challenges, there was no error in this sufficient to justify a new trial.

I am authorized to say that MR. JUSTICE BROWN also dissents.