## UNITED STATES v. PHILLIPS et al.

### No. 1020.

District Court, D. Nebraska.

Aug. 14, 1931.

Ambrose C. Epperson, Asst. U. S. Atty., of Omaha, Neb.

H. W. Brackney and George Bliven, both of Sioux City, Iowa, for defendants.

WOODROUGH, District Judge.

This is a suit in equity brought by the United States to protect the Omaha tribe of Indians in the ownership, use and occupation of certain lands in fractional township 25 north, range 10 east, 6 P. M., which lie along the Missouri river on the west, and also certain lands within the same township situate in the bed of a dried-up lake. The United States alleges that the defendant Phillips and other defendants in privity with him are committing trespasses and setting up wrongful claims and interfering with the rights of the tribe, and, threatened wrongs being also alleged, temporary injunction was issued. The defendant, Phillips, is the owner of lots 1 and 2 in section 20 and lots 1 and 2 in section 21 and lots 6 and 7 in section 29 and lot 8 in section 30. Also two small irregular descriptions in the northwest quarter of section 30 all in the said township. I find he owns no other lands in the township affected by this suit unless lands added by the recession of the river or the lake to the lands above described have become his by accretion.

Upon consideration of the evidence I find the facts as they are set forth in the government's requested findings of fact numbered 1, 2, 3, 4 (adding to the next to the last line after allotted "and patented") 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, to be clearly established.

From the facts so found I conclude that the plaintiff is entitled to the relief prayed for in its petition so far as the land along the river is concerned, and that none of the defenses or counterclaims asserted by the defendants concerning those lands are maintainable. Where, as in this case, the suit is brought by the United States to enforce obligations assumed by the United States under treaty with the Indian tribe and obligations

of guardianship assumed by the United States towards the tribe and the Indians, no statute of limitations is available to the defendants against the United States. The defendants cannot be deemed to have gained anything against the United States by reason of lapse of time or any of the acts of possession, user, or improvement set up in their answer and counterclaim, and it is the duty of this court at the instance of the United States to sustain whatever rights of the tribe were fixed by the treaty and the Acts of Congress diminished only by transfers made pursuant thereto. That all of the lands described in the petition are in Nebraska was settled by former adjudication in this court and by decision of the District Court in Monona county, Iowa, and it so clearly appears from the evidence in this case. I find, also, as in the case of United States v. Decatur Bank, 56 F.(2d) 634, submitted at the same time as this case, that as to the allotted lands acquired by defendants from individual Indians the United States did not intend to allot, and the Indians did not intend to receive, accretions or anything in addition to the acreage in the number of acres specified in each of the conveyances to them.

The lands lying in the bed of what was shown to be a lake on the plat of 1867, and all of which have long since become dry land, present somewhat different problems. Defendant Phillips owns three pieces of land shown by the survey to lie bordering upon the old lake and has been in possession of some part of the old lake bed. Just what part does not appear. The evidence does not show when the lake dried up, though it does appear to have been dry a long time. If the government domain were involved, and if the lake had been a part of the government domain, there seems to be no question under the authorities but that homestead patents to riparian lands would have carried accretions in the lake bed even if the lake was already dried up at the time of the issuance of the patents, and even though the acreage as computed in the survey was mentioned in the patents. "The meander of a body of water or lake in a survey of the public domain excludes its area therefrom, and it becomes subject to the riparian rights of the abutting owners in accordance with state laws." Lee Wilson & Co. v. U. S., 245 U. S. 24, 38 S. Ct. 21, 62 L. Ed. 128. It is also the rule that the owner of land abutting on a lake is entitled to accretions to the middle of the lake as the lake goes down. Hardin v. Jordan, 140 U. S. 371, 11 S. Ct. 808, 838, 35 L. Ed. 428. That a grant of lands bounding upon a lake carries to the center thereof is declared to be common law as well as the law in many states. Bristow v. Connieau, 3 App. Cas. 641 (English). It is undoubtedly the law of Nebraska. But, on the other hand, the lake bed involved here belonged to and was vested in the Indian tribe along with the adjacent lands by the treaty of 1858. The meander of the lake made in the course of the Barrett survey in 1867 did not have the effect to withdraw it from the tribal domain or vest it in the state, because the acts of Congress passed after the treaty fix the dates of the fee-simple patents as the first dates when the laws of the state should extend to the Indian lands. At the time of the meander, therefore, and at the time of the only allotments in which the defendants are interested, namely in 1900, the whole lake was tribal property, and it was the trust obligation of the United States to protect the ownership in the tribe. In the making of allotments it was undoubtedly a duty assumed by the United States to scrupulously safeguard the rights of the tribe and those of individual Indian allottees. Allotment involved selecting and identifying particular lands. I am persuaded therefore that in making the particular allotments here involved the true intent is found in what was done in the situation then existing. The lake shown on the survey is of extremely irregular shape. It was probably pretty well dried up in 1900 and was being used Indian fashion by the tribe. When the allotment for a particular Indian was selected and approved for him it could not have been the intention to give him a piece of land of such indeterminate and indefinite boundary as an accretion into this odd-shaped lake would result in. A white homesteader could follow up his accretions with a surveyor. He has the sense of private ownership. But not an Indian. Assuming, therefore, that there was dry land between the lot line and the survey at the time of the allotment, and that such dry land was used by the tribe Indian fashion, I conclude that only the acreage mentioned in the trust patent was taken from the tribal property, and that the lake bed was left to the tribe. There could be no useful title in it for any individual unless it was surveyed and marked out as to the parcels, and it never has been so surveyed or marked off, though sixty-four years have elapsed since the Barrett survey.

Although the rules for the construction of patents and other grants of land riparian to lakes are as I have stated them, of course no such grant conveys more land

than the parties intend in any case where the intention is revealed. It is always competent for the grantor to limit his grant if he wants to. The rules apply only where there is nothing to go by but the grant.

My conclusion in this case is upon the particular facts presented; the fact that a specific acreage was mentioned in the allotments; that the United States as a middleman between the tribe, and the allottee assumed the duty in allotting to specify just how much and exactly which land it took from the tribe and gave to the individual and did so by metes and bounds and numbered acres; the fact that no marking off of lines in the lake bed was ever made; or demanded in this court where the jurisdiction has always existed; the practical difficulties of any apportioning. The evidence indicates that the value of that part of the lake bed to which the defendants could make any colorable claim is so low at the present time as scarcely to justify the expenditure that would be necessary to employ a master and cause a survey to be made and an apportionment and marking out of metes and bounds. The final patents for two of the pieces of land acquired by defendant, lots 6 and 7 in section 29, were not issued to the Indian allottees until 1910, and the other piece, lot 8 in section 30, not until 1921. Of course defendants could have had no interest before the fee patents were issued. Undoubtedly the lake was all dried up by 1921 and probably so in 1910. There is no evidence that the individual Indians ever claimed anything more than the specified acres granted to them.

Upon consideration of all of the evidence, my decision is that the plaintiff should recover as prayed in the petition. Counsel to submit decree accordingly. Defendants' requests for findings are marked and exceptions allowed.