UNITED STATES of America

v.

Harold Martin BREST.

Crim. A. Nos. E-3241, E-3264, 9853.

United States District Court
W. D. Pennsylvania.

Sept. 30, 1958.

John Gavin, Asst. U. S. Atty., Pittsburgh, Pa., for the United States.

John O. Wickes, Jr., Pittsburgh, Pa., for Harold Martin Brest.

WILLSON, District Judge.

This is a motion to vacate brought under 28 U.S.C.A. § 2255. Harold Martin Brest, the petitioner, was first sentenced in this court by the late Judge Schoonmaker, in the year 1937. He was sentenced under three indictments as follows: No. E–3241, which charges a violation of 18 U.S.C.A. § 408[1], the National Motor Vehicle Theft Act; No. E–3264, which charges kidnapping, a violation of 18 U.S.C.A. § 408(a)[2]; and No. 9853, which charges bank robbery and putting in jeopardy the lives of officers of a bank by use of dangerous weapons, etc. To the three indictments mentioned, Brest entered a plea of guilty on January 20, 1937. He did so without the benefit of counsel. A life sentence was imposed on the kidnapping charge; a five year sentence on the motor vehicle theft charge; and sentences on the counts of the bank robbery indictment aggregating twenty-five years were imposed; all sentences to run concurrently.

Brest was imprisoned at Alcatraz following these sentences. He petitioned the United States District Court in the Southern Division for the Northern Dis-

1. Now 18 U.S.C.A. § 2311 et seq.

2. Now 18 U.S.C.A. § 1201.

trict of California at No. 22862–L for a writ of habeas corpus and on a judgment of that court entered March 23, 1939, his conviction on his plea before Judge Schoonmaker was vacated and set aside and the prisoner was remanded to the United States Marshal for this district to be dealt with according to law. Thereupon on regular proceedings, this court, again by Judge Schoonmaker, vacated and set aside the judgment and sentences entered as a result of the pleas of guilty and directed that the prisoner be arraigned, which was done, and the prisoner plead not guilty to all indictments. Judge Schoonmaker thereupon directed a trial to a jury. Brest was jointly tried on Indictments E–3241 and E–3264, that is, the motor vehicle theft and the kidnapping charges. The jury returned a verdict of guilty. Forty-four minutes after the first trial ended, actual trial commenced on Indictment No. 9853, the bank robbery charge. The jury again returned a verdict of guilty. On June 12, 1939, Judge Schoonmaker imposed sentences identical with those he had imposed on January 20, 1937.

In June of 1957, petitioner by mail filed a motion to vacate the judgment and sentences pronounced against him in 1939. His motion was docketed by the Clerk on July 31, 1957. Subsequently, Brest has filed supplemental motions. His motions were prepared and filed pro se. As is not uncommon in such cases, Brest has assigned numerous reasons in support of his contention that he is illegally imprisoned. From the files and records in the case, however, I am satisfied that Brest raises but one issue of any substance.

The seventh averment in his motion is that he was not present when the jury was impaneled on the bank robbery indictment and that the trial was in progress when he entered the courtroom. Because of this averment, I felt it necessary that hearings be held. Counsel was appointed to represent petitioner, although he himself continued to file so-called supplemental motions and briefs.

Five hearings were held without the presence of petitioner, and then it was concluded that the prisoner's presence in court was necessary. He was thereupon brought to this district from the Leavenworth Penitentiary and he testified at hearings held before me on July 15 and July 22, 1958.

A brief recital of the events and the matters shown of record in these cases is appropriate. On the return of the prisoner to this district in 1939, the court appointed Zeno Fritz, Esq., an experienced trial lawyer and former Assistant U. S. Attorney, to represent him in the trial of the charges contained in the three indictments. The trial records of this court show that at eleven A.M. on May 25, 1939, the jury was called and sworn for the trial of defendant under Indictments Nos. 3241 and 3264, that is, the motor vehicle theft and the kidnapping cases. The Clerk's trial memorandum indicates that at 11:06 A.M., the same date, the United States Attorney Charles F. Uhl, opened the case for the Government. Witnesses were heard and the jury retired for deliberation at 2:46 P.M. on May 26, 1939. The verdict of the jury finding defendant guilty on these two indictments was returned the same day, but the time was not noted.

In the meantime, on May 26, 1939, the Clerk's memorandum shows that the jury was selected and sworn and the trial commenced on the bank robbery indictment. The Clerk's record indicates that at 3:-30 P.M., Mr. Uhl opened for the Government and that the next day, May 27, 1939, the trial closed at 12:16 P.M. Thus the trial record shows that but forty-four minutes elapsed between the end of the first trial and the commencement of the second trial. But during that forty-four minutes, not in the courtroom but in the library on the eighth floor of the Federal Building in Pittsburgh, the jury was selected. There is no record in the files of this case which affirmatively shows that the prisoner was present when the jury was impaneled. The printed Government forms

then used by the Clerk in making his trial memorandum have no space thereon for stating whether defendant was present at the commencement of the selection of the jury. During the forty-four minutes between the trials, the record does show that twenty-eight jurors were called and that the challenges were made, leaving twelve in the box.

Because of the issue presented, the Government was ordered to subpoena witnesses as requested by petitioner. Petitioner was given full opportunity at two hearings to present any evidence on the issue now under discussion. Three persons who sat on the bank robbery jury testified at a hearing before me. These jurors were quite convinced, to the best of their recollection, that the first time they saw Brest was when the jury was brought into the courtroom and each stated that Brest was not present when the jury was selected in the library. In spite of the lapse of nineteen years, these witnesses gave rather credible reasons as a basis for their testimony. They had apparently heard of the charges against Brest which had been well publicized, and as the court understands it, they were rather surprised at his young and otherwise docile appearance. As a matter of fact, Brest even at forty-four years of age is still rather youthful and pleasant in appearance and manner.

Zeno Fritz, Esq., on the other hand, was positive in his testimony that Brest was present when the second jury was selected. His testimony is not necessarily to be doubted, because he would have every reason, as experienced as he is, to see that Brest was given a fair trial. But an additional fact is in the evidence. I find that it was not uncommon at the trial of criminal cases in this court up to and including the year 1939, that prisoners were not always present when the jury was selected. In misdemeanor and other petty offenses they were sometimes left in the Marshal's cage (a detention room in the Marshal's quarters in the Federal Building) rather than being brought into the room where the members of the jury panel were seated. Brest himself says, and his testimony is especially noticed, that he was present when the jury was selected for the first trial, but he says that he was not present when the second jury was selected.

Rules 36 and 43, 18 U.S.C.A., govern the points under discussion. Rule 43, of course, requires the presence of the defendant at every stage of his trial, including impaneling of the jury. I take it that the requirement set forth in the rule is but a codification of the prior law. The decisions on the point are numerous. See Hopt v. People of Territory of Utah, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262; Lewis v. United States, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011; Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674; and United States v. Johnson, 3 Cir., 129 F.2d 954, 144 A.L.R. 182.

Under the evidence and the authority set forth in the rule and in the decisions cited, if this court concludes that Brest was not present when the jury was selected in the bank robbery trial, his motion to vacate should be granted.

The Government, however, contends in the instant case that Brest was present, but that the failure of the record to show his presence is but a clerical mistake or omission which can be corrected or supplied under Rule 36 of the Federal Rules of Criminal Procedure. I assume, also, as is the case with Rule 43, that the provisions of Rule 36 are an embodiment of the prior law on the subject. The trouble I have, however, with the application of Rule 36 to the instant case is that I am unable to find under the evidence that Brest was present when the bank robbery jury was impaneled. I understand the principle to be that there is no presumption of regularity in a proceeding of this kind. The record should affirmatively show the presence of the defendant at all stages of trial in

a felony case. Lewis v. United States, supra, and the decisions therein cited. In this case, based upon the evidence produced at the hearings before me, I am unable to find that Brest was present because the oral testimony is in balance. The evidence, as one court has put it recently, stands in equipoise. There is no fair preponderance of the evidence upon which to base a finding that Brest was present at the commencement of the selection of the jury. It is not a clerical error or an omission. The record is wanting in an essential fact. Therefore, the absence of an affirmative record requires a new trial on the bank robbery indictment and an appropriate order will be entered.

■ On Indictment E–3264, a different result is reached under the provisions of Rule 36, which governs the point. Neither of the rules cited were, of course, in effect during the 1939 trials, but as indicated, these rules are but an expression of long standing principles of law. In the trial on the kidnapping charge, Brest admits his presence at the time the jury was impaneled. This is, of course, a capital case, because the death penalty might have been imposed under the statute. Nevertheless, the absence of an affirmative record showing Brest's presence during the impaneling of the jury was cured by his own testimony on the point. It amounts to an omission in the record. Rule 36 permits the correction of the record at any time. However, Rule 36 makes no distinction between capital and non-capital cases. I see no reason why it should. Although it is a Pennsylvania decision, Commonwealth ex rel. Tanner v. Claudy, 378 Pa. 429, 106 A.2d 401, is believed to express the Federal law on this subject as it existed in 1939 and as it is laid down in Rule 36. Also, for an interesting discussion on the present point, see Bradley v. Smyth, 4 Cir., 1958, 255 F.2d 45.

Any issues as to the motor theft case are now moot because he has served his time under that sentence. Brest having stated in court that he was present when the jury was selected on the kidnapping case, the absence of an affirmative record showing his presence amounts to an oversight or omission under the provisions of Rule 36, so that Brest is entitled to no relief and indeed asserts no claim for relief based on this ground.

■ As mentioned, petitioner prepared and filed his original and supplemental motions pro se. He shoots in all directions, so to speak, in attempting to secure some relief. However, petitioner's other claims for relief have no merit. For instance, he says that having served twenty-seven months in Alcatraz and having been released on a writ of habeas corpus, his return to this district was illegal and without authority because no extradition proceedings were had in the State of California, all of which is a violation of due process. He, of course, fails to realize that at all times he was in Federal custody and that the United States District Judge in California directed his return to the United States Marshal of this district so that no state proceedings were necessary.

■ Brest claims double jeopardy because he was tried and convicted for the same offenses to which he pleaded guilty and which were vacated and set aside. This contention was heard by Judge Schoonmaker prior to the 1939 trials and of course the point was ruled against the petitioner. Brest complains also, and his complaint has some lay logic behind it, that his punishment was increased and his parole eligibility delayed because he was given no credit for the two and one-half years he served at Alcatraz prior to his 1939 trials. He, of course, fails to realize that the sentences pronounced by Judge Schoonmaker were lawful and within the provisions of the statute, even though another judge might have given him a lesser sentence because of the prior imprisonment.

■ Petitioner says next that he was denied his right to a speedy trial in vio-

lation of the Sixth Amendment, because thirty months passed before he was actually tried. It is noticed in this connection that as far as a speedy trial is concerned, Judge Louderback's decision was handed down on March 23, 1939, and as indicated, Brest was tried in Pittsburgh in May of the same year, so that this complaint has no merit. Brest next complains that he was convicted on the conflicting testimony of witnesses and otherwise complains of the trial evidence admitted at his 1939 trial. There is no merit to this contention, which relates to trial rulings, and if incorrect, such rulings were subject to being corrected on appeal.

In this connection, in his supplemental motion and brief filed since the July, 1958 hearings, petitioner complains of the admission of his confessions in evidence in the 1939 trials. He says that the confessions were obtained from him during the time he spent in Boise, Idaho, after his arrest and before his return to Pittsburgh. He says he was without counsel during that period and also makes some point of being interrogated at intervals over a period of three days. In this connection it is noticed that while at Boise, petitioner was in the custody of state officers. When it was finally determined by the state officers that Brest was wanted on a Federal indictment found in this district, an FBI man visited him. Brest then repeated his confession.

Brest makes no showing of being abused or otherwise mistreated during the period that he was detained by the state authorities in Idaho. As soon as the Federal authorities were brought into the case, Brest was at once returned to Pittsburgh, but only after he appeared before a Federal judge. It is noticed that prior to his arrest in Idaho, Brest had been a fugitive. He was picked up in Boise, Idaho, because he was spending a great deal of money at night clubs. At the hearing before me, Brest at no time left the impression that he con-

fessed to anything against his will. On the contrary, he gave the distinct impression during his testimony, that he took considerable pride and had some amusement from the fact that the Idaho officers had to spend a large part of the three days checking out the fake alibis he had given them. His confession came only after he had wearied of giving the Idaho officers the run-around, so to speak.

■ As to his confessions, his first point is that they were given to the state officers during a period of time wherein he was without benefit of the advice of counsel as to his rights. His next point is that the confessions were given during a period of time when he was detained without arraignment. The record indicates and Brest conceded that witnesses testified during his two trials as to the charges contained in the indictments. His convictions rested on other evidence than the confessions. In this connection, of course, the issue as to whether the confessions were voluntarily made was a matter to be considered by the trial judge at the time the confessions were offered into evidence. The rulings of the trial judge were subject to correction on appeal if erroneous. No appeal was taken, although Brest was represented by able and experienced counsel. In any event, I find as a fact that from Brest's oral testimony given at the two hearings before me, he was unable to make a showing that the confessions were involuntary.

The petitioner is a person of intelligence. Before me he was mentally alert and had a good grasp of the events of the years past and of the issues in his case. He has over the years acquired some knowledge of constitutional principles and he has had the advice of persons learned in the law who happen to be incarcerated with him. But, having given Brest every opportunity to present facts which might entitle him to succeed on the motion, I hold him to be successful

on the one point, but as to the other points raised by the petitioner, I find no merit whatsoever.

This opinion is regarded as comprising the findings of fact and conclusions of law appropriate to the points raised. Appropriate orders will be entered.