UNITED STATES of America

v.

**Donna SMITH, Appellant.**

**No. 89–3006.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 12, 1989.

Decided Dec. 15, 1989.

---

G. Godwin Oyewole, Alexandria, Va., appointed by this Court, for appellant.

David M. Zlotnick, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Washington, D.C., John R. Fisher, San Francisco, Cal., Elizabeth Trosman, and Eric B. Marcy, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before BUCKLEY, D.H. GINSBURG, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Donna Smith ("Smith" or "appellant") appeals from her conviction of conspiracy to commit medicaid fraud in violation of 18 U.S.C. § 371 and five substantive counts of medicaid fraud in violation of 42 U.S.C. § 1320a–7b. She argues that the District Court's method of jury selection improperly interfered with the exercise of her right to peremptory challenges and that the trial court erroneously refused to grant a mistrial after the prosecution put an improper question to a character witness on cross-examination. Finding no merit in either assignment, we affirm the conviction on all counts.

## I. Background

At the beginning of the jury selection process, the district judge conducted the voir dire and struck a number of jurors for cause. The Court then ordered the seating of the next twelve members of the venire in the box. The Court allotted two additional strikes to the defense in addition to the ten mandated by Fed.R.Crim.P. 24(b), so that the defense exercised a total of twelve peremptory strikes, and the prosecution six. Under the method of jury selection employed by the Court, counsel exercised simultaneous written peremptory strikes. After each round of strikes, new jurors filled the empty places in the box, and counsel exercised another round of strikes, until the exhaustion of the allotted peremptories. During each round, each counsel enjoyed the right to pass, instead of exercising a strike, thereby saving that challenge for a later round. When the defense had exercised all of its challenges, the prosecution, having passed on an earlier round, retained the right to strike one more juror. The prosecution used this last strike to remove a prospective juror, compelling the seating of the next member of the venire, who was seated automatically because no party retained the right to a peremptory strike. Smith's counsel objected to the government's ability to strike a juror after the defense had exercised all of its strikes. At trial Smith called a witness to testify to her reputation in the community for truth and honesty. On cross-examination, the prosecutor asked whether the witness was aware that Smith had been fired for skipping work when Smith represented that she had been attending a class. The prosecutor then asked whether the witness was aware that Smith had asked the instructor of the class to lie for her, a "fact" not in evidence. Smith's attorney objected as the prosecutor spoke, but the prosecutor finished the question. The Court sustained Smith's objection.

## II. Analysis

### A. Jury Selection

While the Constitution nowhere requires, or indeed mentions, peremptory challenge

of jurors, United States courts have historically recognized the right of parties to excuse a fixed number of prospective jurors without cause. *See Swain v. Alabama,* 380 U.S. 202, 212–18, 85 S.Ct. 824, 831–34, 13 L.Ed.2d 759 (1965) (tracing the history of peremptory challenges back through Blackstone and Coke to the Fourteenth Century). Indeed, in the case of *Lewis v. United States,* 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892), the Supreme Court reversed and remanded for new trial a conviction where the record did not disclose adequately that the defense had been afforded sufficient opportunity to make informed use of its allotted peremptory challenges. The Supreme Court long ago stated that "[t]he right to challenge a given number of jurors without showing cause is one of the most important of the rights secured to the accused.... Any system for the empanelling of a jury that presents [sic] or embarrasses the full unrestricted exercise by the accused of that right, must be condemned." *Pointer v. United States,* 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208 (1894).

Smith claims that the system employed by the District Court as set out in Part I of this opinion in fact did prevent or embarrass the unrestricted exercise of her rights, as condemned in *Pointer.* In so arguing, Smith places principal reliance on the reasoning of the District of Columbia Court of Appeals in *Butler v. United States,* 377 A.2d 54 (D.C.1977)—a reliance that is upon examination badly misplaced. Smith is correct that in *Butler* the Court of Appeals of the District did determine that "the method used ... in jury selection ... prevent[ed] 'a party from ... effectively using his last challenge' and frustrate[d] an 'effective use' of a challenge on the final round...." *Butler* 377 A.2d at 56. While recognizing that the *Butler* court's decision does not bind us, Smith urges us to follow that well-reasoned decision and reverse her conviction here as the court in *Butler* reversed the conviction before it. The difficulty for Smith is not that the *Butler* decision is

unpersuasive, but that it is inapplicable to the facts before us.

The system of jury selection disapproved in *Butler* not only differed from but was in fact opposite to the system employed by Judge Harris in the present case. In *Butler,* the trial court had used a method of jury selection substantially similar to Judge Harris's method, except that the court there counted a pass as a strike. Thus, when the defense and the government were each down to their last challenge, and the government exercised its challenge, the simultaneous strike method dictated the seating of the next juror in line no matter what defendant did. If defendant exercised her strike, the next juror would be seated and the defense would have no strikes left. If the defense passed, that pass would be counted as a strike, and the defense would have no strikes left. Therefore, the court disapproved the "pass counts as a strike" method of jury selection. Under the then-governing District of Columbia statute, D.C.Code § 23–105(a), as under our governing Fed.R.Crim.P. 24(b), the defendant was entitled to the exercise of ten peremptory challenges.[1] The *Butler* court reasoned convincingly that the "pass counts as a strike" system meant that rather than exercising ten strikes, the defendant could exercise only a total of ten passes and strikes combined. As the same court later recognized, a jury selection method involving the same sort of striking procedure, but under which a pass does not count as a strike, does not in any way prevent the full and unrestricted exercise of the statutory allocation of peremptory challenges. *Taylor v. United States,* 471 A.2d 999 (D.C.1983). It was this latter system which the District Court employed in the present case.

Although Smith correctly argues that the system of selection in *Butler* impinges on the right to peremptory challenge as recognized at the common law and in Rule 24, the evil recognized in *Butler* is alleviated by the very system employed here. True, as it happened, the prosecution

---

1. As noted above, the District Court here expanded that number to twelve in light of the multiple defendant trial, as permitted by Rule 24.

exercised the last challenge, but not because the system deprived appellant of any opportunity to exercise her challenge; rather, for whatever tactical reason, she chose to use her challenges before the prosecution exhausted its own. Rule 24 provides the defendant only with a finite number of peremptory challenges, not a right to have one more challenge after the government has exercised its last one. Nothing in the rule or the governing case law requires that the last challenge belong to one side or the other, only that each have an effective opportunity to employ, or to decide not to employ, its statutory (and where appropriate, court-expanded) allocation. As one of our sister circuits has observed, Rule 24 "does not mandate that a defendant be allowed to exercise the final peremptory challenge." *United States v. Romero*, 780 F.2d 981, 984 (11th Cir.1986), a conclusion consistent with our observation that "[a] defendant may not demand, as a matter of right, additional peremptory challenges once his original allotment has been expended." *United States v. Caldwell*, 543 F.2d 1333, 1347 n. 57 (D.C.Cir.1974).

As we have further observed, "the trial judge has broad discretion to structure the method of exercising peremptory challenges...." *United States v. Haldeman*, 559 F.2d 31, 80 (D.C.Cir.1976). In *Haldeman* we approved a jury selection system similar to that employed in the present case, in that prospective jurors moved into the box in a predetermined order; under such a system, a defendant having exercised all his strikes might face a final juror subject to challenge by the prosecution but not the defense. In that case the defense's argument was stronger than the present one, because that trial judge employed a hybrid of the "pass counts as a strike" and the "pass does not count as a strike" systems so that a party twice failing to exercise a strike forever lost that particular challenge. Nonetheless, we held that in light of the breadth of the trial judge's discretion, "he did not abuse it in this case." *Id.* at 80. Neither did the trial judge in the present case.

We are supported in this conclusion by the language of the Supreme Court in *Lewis*. There, as we noted above, the Court did vacate a conviction where the trial court's method of jury selection had impaired the effective use of a defendant's peremptories, but it did so noting that "we do not deem it our duty to prescribe ... rules to regulate the discretion of the [trial] [c]ourts in the empanelling of jurors in criminal cases." *Lewis*, 146 U.S. at 379, 13 S.Ct. at 139. Even more tellingly, the *Lewis* Court observed that "[i]f it were a fact that the defendant had made his twenty challenges before the government had challenged" the disputed jurors, "it is difficult to see how his rights were prejudiced...." *Id.* The Court reversed the conviction only because the record did not adequately support a conclusion that this was the case. In the present case, where the record is plain that the defendant had exhausted her challenges before the time of dispute, our course is clear. We find no error.

## B. *The Denial of Mistrial*

Smith's second assignment of error is the trial court's denial of her motion for mistrial after the prosecutor asked a character witness an improper question during cross-examination. The relevant portion of the examination is as follows:

MR. MORRIS: You testified that Donna Smith is an honest, trustworthy person?

MS. GREENE: Yes.

MR. MORRIS: Did you know that she had been fired from George Washington Medical Center in 1985?

MS. GREENE: No, I did not.

MR. MORRIS: Did you know that she was fired because she had been AWOL, she had been skipping work, because she represented that she had been attending a medical terminology class?

MS. GREENE: No, I did not know that.

MR. MORRIS: And did you know that the day before she was fired, she went to the instructor of that medical terminology class and asked him to lie for her, ...

MR. OYEWOLE: Objection, your honor.

MR. MORRIS: ... to say that she, in fact, had attended those classes?

MR. OYEWOLE: Objection.

Transcript III, 140.

After a bench conference, the trial court sustained the objection. The defense rest-

ed, and the trial adjourned for the day. During the next trial day, after other proceedings, Smith moved for a mistrial. At no time did she request a limiting instruction, or any other relief. After hearing argument, the trial court denied the motion for mistrial.

█ Although we accept Smith's proposition that the prosecutor's question was improper, especially as there was no evidence in the record for the alleged "facts" underlying the question, and while we certainly cannot commend the prosecutor for continuing with the offending question after the objection, we find no error in the trial court's ruling denying the motion for mistrial. As we observed in *United States v. Tarantino*, 846 F.2d 1384, 1413 (D.C.Cir. 1988), "[t]he decision whether to grant a mistrial generally rests within the sound discretion of the trial court, and the single most important factor in making that determination is the extent to which the defendant has been prejudiced." In *Tarantino*, we upheld the denial of a mistrial even though a witness had expressly referred to another indictment against the defendant. In *Hardy v. United States*, 343 F.2d 233, 234 (D.C.Cir.1964), *cert. denied*, 380 U.S. 984, 85 S.Ct. 1353, 14 L.Ed.2d 276 (1965), we upheld the denial of a mistrial where a witness blurted out that the defendant had been in the penitentiary. In *McIntosh v. United States*, 309 F.2d 222, 222 (D.C.Cir. 1962), *cert. denied*, 373 U.S. 944, 83 S.Ct. 1557, 10 L.Ed.2d 700 (1963), where a witness had referred to the defendant's "parole officer," we held that "the court did not abuse its discretion in refusing to declare a mistrial." We upheld the conviction in *McIntosh*, noting that "the direct evidence against the defendant was so strong as to make it practically certain that the vague and indirect suggestion of some previous conviction had nothing to do with the defendant's conviction of the crime for which he was on trial." *Id.* It hardly makes sense that we would find an abuse of discretion in the far weaker circumstance of the denial of a mistrial where the judge sustained objection to a question, left unanswered, that at most suggested un-

truthful but noncriminal conduct, especially where the motion for mistrial was not even made until later in the trial proceedings. We further note that here, as in *McIntosh*, the prosecution's case was otherwise strong.

If the events in this case take the question of mistrial outside the discretion of the judge, then we fear that a staggering percentage of cases will likewise fall outside that realm. The offices of sustaining an objection and giving limiting instructions (not sought in this case) seem vacant if these facts compel mistrial. Not every improper question or even answer is enough to void a trial. As we have generally left to the discretion of the trial judge the determination of when enough prejudice results to warrant the most drastic remedy, we do so again. The denial of mistrial here does not even approach an abuse of that discretion.

### III.   CONCLUSION

For the reasons set forth above, we find that the trial court committed no error either in the jury selection process or in the denial of appellant's motion for mistrial. We therefore affirm the judgment of the District Court.