# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
               ) No. 72032-5-I
       Respondent, )
               ) DIVISION ONE
     v. )
               )
LARDELL COURTNEY, ) UNPUBLISHED OPINION
               )
       Appellant. ) FILED: February 17, 2015

SPEARMAN, C.J. — After stealing two bottles of liquor from a Safeway store, Lardell Courtney first fled, then fought with pursuing loss prevention officers in the store parking lot. Courtney was apprehended and subsequently convicted of one count of second degree robbery and one count of third degree assault. The jury acquitted him of a second count of third degree assault. On appeal, he claims: (1) the assault merged with the robbery; (2) the crimes were the same criminal conduct; (3) the trial court's decision to entertain juror challenges in writing at a sidebar conference violated the public trial right and his right to be present at all critical stages; (4) insufficient evidence supports his robbery conviction; and (5) ineffective assistance of counsel. We agree regarding merger and vacate his assault conviction. We remand for resentencing without reaching his same criminal conduct argument. We reject his remaining claims.

FACTS

This case arises from a shoplifting incident that occurred on the evening of September 6, 2012, at a Tacoma, Washington Safeway store. The facts surrounding the incident were established at trial by the State's witnesses, Safeway loss prevention officers, Nathaniel Duval-Igarta and Axel Engelhardt-Parales. They are undisputed.

On the night in question, Lardell Courtney entered the Safeway store and headed for the liquor aisle. Once there, he placed two bottles of Hpnotiq liquor inside his pants and left the store without paying for them. Undercover loss prevention officer Duval-Igarta had been watching Courtney and, as Courtney exited the store, Duval-Igarta pursued him. When Duval-Igarta was within about ten feet of Courtney, the officer held up his badge, identified himself, and ordered Courtney to stop. Courtney fled and Duval-Igarta gave chase. A second loss prevention officer, Engelardt-Parales, joined the pursuit.

When Duval-Igarta caught up to Courtney in the parking lot, Courtney attempted, but failed, to punch him. Duval-Igarta used Courtney's forward momentum to push him to the ground. As Courtney fell, the stolen bottles of liquor, slipped from his pants. As Duval-Igarta and Courtney struggled on the ground Courtney climbed on top of the officer and struck him in the face. A moment later, Englehardt-Parales joined the fray and helped Duval-Igarta subdue Courtney.

Courtney was subsequently charged with one count of second degree robbery (count I) and two counts of third degree assault, one count each for

Duval-Igarta (count II) and Englehardt-Parales (count III). On October 25, 2012,

the charging information was amended to add as an aggravating factor that

Courtney committed each offense shortly after being released from incarceration.

Prior to jury selection the trial court directed counsel to exercise for cause

challenges as follows:

> COURT: If there are any causes that arise, challenges for
> cause that arise while you're talking to jurors, I would ask that
> you just stop and we'll deal with that outside the presence of
> other jurors. If we need to excuse them outside in the hallway,
> we can do that; otherwise, we can take them up at the end of
> the juror questioning and prior to you doing your peremptory
> challenges, executing any challenges for cause.
> . . .
> PROSECUTOR: Your Honor, just to clarify, the cause
> challenges you want us making at the time they arise?
>
> COURT: I would just ask you call for a sidebar, and we can talk
> about it briefly and then figure out what we're going to do to
> deal with it formally on the record.
>
> PROSECUTOR: Okay.
>
> COURT: If it's an obvious one, I may, if you're doing the
> questioning and it's a fairly obvious challenge, then I'll ask Mr.
> Shaw if he has any objection to excusing that juror, just to
> move things along rather than setting it out. Any other
> procedural issues?

Verbatim Report of Proceedings (VRP) (01-23-13) at 4-5. Neither party objected

to this procedure. After the prosecutor and defense counsel had questioned

prospective jurors, the trial court called both attorneys, but not Courtney, to a

sidebar conference. Later, the trial court indicated on the record that, during the

sidebar, the judge and attorneys had discussed dismissal of jurors 11 and 16 for

cause. The State had objected to dismissal of juror 11, who was removed

because she worked for Safeway and, in the judge's opinion, was potentially biased. Juror 16 was removed because the court questioned his ability to follow the instructions and keep an open mind.

Jury selection continued and, just before the parties exercised their peremptory challenges, the trial court announced:

> COURT: Folks, you can sit back and relax. The attorneys will be making their final selection here in writing and then when they're done, we will have folks take the jury box. You can talk quietly between yourselves over anything other than this case. Okay?
>
> And [defense counsel], I'm going to turn off the headset. [Judicial assistant] if you would do that.
>
> . . .
>
> (Off the record while the attorneys are doing their peremptory challenges).

Supplemental (01/23/13) VRP at 47. The attorneys then exercised peremptory challenges at sidebar resulting in the dismissal of jurors 3 and 10. Subsequently, the court empanelled the jurors who had been selected to decide the case, plus two alternates. After the sidebar conference, the court called the jurors who had been selected to hear the case to the jury box and excused the remaining jurors. The trial court did not announce which jurors had been excused due to the exercise of peremptory challenges or which party had challenged them. Instead, the court filed a document listing the name and number of each juror struck via a peremptory challenge, the party exercising the challenge, and the order in which the challenge was used.

4

At the close of evidence, the jury convicted Courtney of robbery in the second degree (count I) and assault in the third degree (count II). The jury acquitted Courtney of assault in the third degree as charged in count III. The jury also found, via special verdict, that Courtney had committed the crimes charged in counts one and two shortly after being released from incarceration. Sentencing occurred on February 1, 2013. The State argued that, based on Courtney's prior criminal history, he had an offender score of 10. Courtney disagreed with this calculation, arguing that his score was 9 because the current robbery and assault involved the same criminal conduct and should be treated as a single offense for purposes of his offender score. The trial court did not conduct a "same criminal conduct" analysis on the record, but nevertheless concluded that Courtney's offender score was "over ten." VRP at 170. The court imposed an exceptional sentence of 96 months on the robbery conviction (comprised of a high end standard range sentence of 84 months plus an additional 12 months confinement based upon the aggravating factor) and a standard range sentence of 60 months for the assault conviction, to be served concurrently. Courtney appeals.

## DISCUSSION

### Double Jeopardy

Courtney first challenges his convictions on double jeopardy grounds, arguing that robbery in the second degree and assault in the third degree, as charged and proved in this case, merge and his conviction for both crimes violated the double jeopardy provisions of the federal and state constitutions. We review this claim de novo. State v. Freeman, 153 Wn.2d 765, 770, 108 P.3d 753

No. 72032-5-I/6

(2005).

The double jeopardy provisions of the federal and state constitutions "protect a defendant from being punished multiple times for the same offense." State v. Allen, 150 Wn. App. 300, 312, 207 P. 3d 483 (2009) (citing State v. Adel, 136 Wn.2d 629, 632, 965 P.2d 1072 (1998)). When there are multiple punishments for the same conduct, the primary question is whether the legislature intended that multiple punishments be imposed. Freeman, 153 Wn.2d at 771. The merger doctrine provides one basis for ascertaining legislative intent not expressly stated or implicit from the language of the statute.[1] Id. at 772-73; State v. Vladovic, 99 Wn.2d 413, 422, 662 P.2d 853 (1983)).

As a general rule, the merger doctrine applies "where the Legislature has clearly indicated that in order to prove a particular degree of crime (e.g., first degree rape) the State must prove not only that a defendant committed that crime (e.g., rape) but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes (e.g., assault or kidnapping)." State v. Davis, 177 Wn. App. 454, 460-61, 311 P.3d 1278 (2013) review denied, 179 Wn. 2d 1025, 320 P.3d 719 (2014). In determining whether crimes merge, we do not focus narrowly on the express designation of various degrees of a crime in the criminal statutes. Rather, we inquire as to the "manner in which the offenses

---

[1] The State suggests that because second degree robbery and third degree assault constitute separate offenses under the "same evidence"/Blockburger test, we need not consider merger doctrine in determining whether a double jeopardy violation exists. See, Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932); State v. Calle, 125 Wn.2d 769, 777, 888 P.2d 155 (1995) ("same evidence" test). Because the "same evidence"/Blockburger test is merely one of several means of determining legislative intent to impose multiple punishments for the same offense, the argument is not well taken. See, Freeman, 153 Wn.2d at 771.

6

are charged and proved in a particular case and whether the State was required to prove the act constituting the merging crime to elevate the other crime." Id. at 463.

Davis is instructive. The case involved a double jeopardy challenge to convictions for second degree kidnapping and second degree assault, arising from an incident in which the defendant abducted two victims at gunpoint. Id. at 460. The defendant in Davis argued that second degree assault merged with second degree kidnapping because, as charged and proved by the State, the act constituting the assault—Davis pointing a gun at his victims—was the same act that constituted the threatened use of deadly force necessary to elevate unlawful imprisonment under RCW 9A.40.040 to second degree kidnapping under RCW 9A.40.030. Id. at 464. We agreed, holding that, though not specifically designated by statute as a lesser degree of kidnapping, the crime of unlawful imprisonment should be considered as such for purposes of merger analysis. Id. at 461. Our rationale was based on the fact that the two criminal statutes were codified in consecutive sections of the same chapter and, as charged and proved, unlawful imprisonment was a lesser included offense of kidnapping. We concluded that these factors indicated the legislature's intent not to impose multiple punishments under the circumstances.

The present case is like Davis. It involves a crime—third degree theft—not specifically designated as a lesser degree of the charged crime—second degree robbery, but codified in the same chapter of the criminal code, chapter 9A.56 RCW. Also like Davis, in order to elevate one crime to a greater one—

7

here, third degree theft to second degree robbery—the State had to prove conduct that constituted a separate crime—assault. Accordingly, we conclude that where a charge of assault elevates the crime of theft to the crime of robbery, the merger doctrine may apply.

The State contends that even if the merger doctrine generally applies in this circumstance, it is inapplicable on the facts of this case. The State argues the robbery and the assault charge regarding Duval-Igarta are based on two separate acts of force. According to the State, the swing-and-miss while Courtney and Duval-Igarta were both still standing was committed in an effort to retain the stolen bottles of liquor and thus supports the robbery charge, while the successful punch was committed to evade lawful capture, and thus supports the assault charge.[2] Thus, the State contends it is evident that the jury's verdicts as to each charge were based on separate acts. We disagree.

In order to withstand a double jeopardy claim, it must be manifestly apparent that the jury based each conviction on a separate act. State v. Mutch, 171 Wn.2d 646, 664, 254 P.3d 803 (2011). "Considering the evidence, arguments, and instructions, if it is not clear that it was 'manifestly apparent to the jury that the State [was] not seeking to impose multiple punishments for the same offense' and that each count was based on a separate act, there is a double jeopardy violation. Id. (quoting State v. Berg, 147 Wn. App. 923, 931, 198 P.3d 529 (2008).

---

[2] To convict Courtney of third degree assault the State bore the burden of proving that he assaulted a person with intent to prevent or resist lawful apprehension. RCW 9A.36.031(1)(a).

8

In this case, the jurors were instructed, in relevant part, as follows:

INSTRUCTION NO. 7

To convict the defendant of the crime of Robbery in the Second Degree as charged in Count I, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 6th day of September, 2012; the defendant unlawfully took personal property from the person or in the presence of another;
(2) That the defendant intended to commit theft of the property;
(3) That the taking was against that person's will **by the defendant's use or threatened use of immediate force, violence or fear of injury to that person** or to that person's property or to the person or property of another;
...

INSTRUCTION NO. 12

To convict the defendant of the crime of Assault in the Third Degree as charged in Count II, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 6th day of September, 2012, the defendant assaulted Nathaniel Duval;
...

INSTRUCTION NO. 18

An assault is **an intentional touching or striking of another person that is harmful or offensive regardless of whether any physical injury is done to the person.** A touching or striking is offensive if the touching or striking would offend an ordinary person who is not unduly sensitive.

An assault is also **an act done with intent to inflict bodily injury upon another, tending but failing to accomplish it and accompanied with the apparent present ability to inflict the bodily injury if not prevented.** It is not necessary that bodily injury be inflicted.

9

> An assault is also **an act done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury** even though the actor did not actually intend to inflict bodily injury.

CP at 23, 28, 34 (emphasis added).

As charged in this case, both the robbery and assault charges could be proved by evidence that Courtney either used or threatened to use force. The State offered evidence that he did both, i.e., the successful punch and the swing-and-miss. Because the jury instructions did not limit the jurors concerning which act related to which crime, they could have considered either the swing-and-miss or the successful punch in support of either. More importantly for our merger analysis, given the ambiguity in the instructions, the jurors could have based both convictions on only one of the two acts. Under the latter circumstances, conviction for both crimes violates double jeopardy.

The State argues that Instruction No. 2 resolves this problem. Instruction No. 2 provides:

> [a] separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count.

CP at 18. The State contends that this instruction sufficiently informed the jury that each crime required proof of a different act. But our Supreme Court struck down this argument with regard to an identical instruction in Mutch, 171 Wn.2d at 662-63 (agreeing with this court that, where jury instructions "fail[ ] to include sufficiently distinctive 'to convict' instructions or an instruction that each count must be based on a separate and distinct criminal act," an instruction identical to

Instruction No. 2 here "is not saving [because] it still fails to [ ]inform[ ] the jury that each 'crime' required proof of a different act.").

The State also argues that any potential violation was cured by its closing argument, during which the prosecutor asserted a distinction between the robbery and assault charges in this case based on the moment Courtney lost possession of the stolen bottles of liquor. He argued, "[w]e had the robbery that occurred while the defendant still had the bottles, and then we had two assaults that occurred after the bottles skidded across the pavement." VRP at 124. The State claims the prosecutor made a clear election of which act supported each charge, as is allowed in a multiple acts case. We disagree.

The prosecutor acknowledged that the struggle between Courtney and the officers "happened in the span of movements, not several minutes." VRP at 125. This fact seriously undermines any attempt to separate the events of this case from one ongoing crime and pursuit to three singular acts with discrete intents. Additionally, we cannot consider the prosecution's election at closing in isolation. Mutch, 171 Wn.2d at 664; State v. Kier, 164 Wn.2d 798, 813, 194 P.3d 212, (2008). The evidence presented to the jury regarding Courtney's intent after he lost the bottles was, at best, ambiguous. The jury could reasonably infer from the evidence that both his attempted and successful punches were committed with intent to retain stolen property or overcome resistance to the taking of it, i.e., in furtherance of the robbery. And, as previously discussed, the jury instructions did not specify which act of force related to which crime. While the prosecutor attempted to require this finding at the close of the trial, the jury was properly

instructed to base its verdict on the evidence and instructions and not on the arguments of counsel.

Based on the totality of the record, we find that no clear election was made in this case. We, therefore, vacate Courtney's conviction for assault in the second degree and remand for resentencing. See, State v. Weber, 159 Wn.2d 252, 269, 149 P.3d 646 (2006) (usual remedy for double jeopardy violation is to vacate the offense carrying the lesser sentence).

Public Trial Right

Courtney also claims for the first time on appeal that the trial court's decision to entertain juror challenges in writing at a sidebar conference violated his right to a public trial. The alleged error has not been preserved for review.

Under RAP 2.5(a)(3), appellate courts will review an alleged manifest error affecting a constitutional right even if not raised in the trial court. Sublett, 176 Wn. 2d at 78. Generally, for relief to be granted, a defendant must show actual prejudice resulting from the error. Id. However, "[v]iolation of the public trial right, even when not preserved by objection, is presumed prejudicial to the defendant on direct appeal." State v. Wise, 176 Wn.2d 1, 16, 288 P.3d 1113 (2012). Thus, the dispositive inquiry is whether the procedure adopted by the trial court here impinged the public trial right.

It is well settled that the public trial right encompasses "'the 'voir dire' of prospective jurors who form the venire (comprising those who respond to the court's initial jury summons and who are *not* subsequently excused administratively).'" State v. Slert, 181 Wn.2d 598, 605, 334 P.3d 1088, 1091

(2014) (quoting State v. Wilson, 174 Wn. App. 328, 338, 298 P.3d 148 (2013));

see also, Presley v. Georgia, 558 U.S. 209, 213-214, 130 S.Ct. 721, 175 L.Ed.2d

675 (2010); Wise, 176 Wn.2d at 11. But our Supreme Court's public trial right

cases regarding jury selection have involved the actual questioning of jurors.

E.g., Wise, 176 Wn.2d at 11-12; State v. Paumier, 176 Wn.2d 29, 35, 288 P.3d

1126 (2012). No Supreme Court case has held that the public trial right applies to

the dismissal of jurors after questioning is over. Divisions II and III of this court

have held that it does not. State v. Marks, __ Wn. App. __, 339 P.3d 196, 199

(2014) ("the exercise of peremptory challenges is not part of voir dire"); State v.

Dunn, 180 Wn. App. 570, 575, 321 P.3d 1283 (2014) rev. denied, 340 P.3d 223

(2015); State v. Love, 176 Wn. App. 911, 920, 309 P.3d 1209 (2013) (holding

that public trial right does not attach to the exercise of for cause and peremptory

challenges during jury selection), rev. granted, ___ Wn.2d ___, 340 P.3d 228

(2015). And we recently cited Marks, Dunn, and Love with approval in State v.

Filitaula, __ Wn. App. __, 339 P.3d 221 (2015), affirming a challenge procedure

virtually identical[3] to the one used here, holding that the exercise of peremptory

challenges in writing as opposed to orally did not constitute a courtroom closure

where "[t]he written form on which the attorneys wrote down their peremptory

challenges was kept and filed in the court record at the end of the case. It

contain[ed] the names and numbers of the prospective jurors who were removed

---

[3] Although Filitaula involved challenges for cause rather than peremptory challenges, we see no basis to distinguish the procedures used in each case based on the type of challenge at issue. In each case, the public and the defendant had the same right to scrutinize the jury selection process.

by peremptory challenge, list[ed] the order in which the challenges were made, and identifie[d] the party who made them." Id. at 223.

Based on this authority, we hold that the trial court's decision to conduct peremptory challenges at sidebar was not a courtroom closure that implicated the public trial right. Courtney cannot establish there was a manifest error affecting the public trial right and, consequently, he may not raise the issue for the first time in this court. Sublett, 176 Wn.2d at 77; RAP 2.5(a)(3).

Right to Be Present

Courtney also claims for the first time on appeal that the trial court's peremptory challenge procedure violated his due process right to be present for all critical stages of trial. Because Courtney fails to establish manifest constitutional error, the issue has not been preserved for review. Sublett, 176 Wn.2d at 78; RAP 2.5(a)(3).

Courtney fails to establish that the trial court excluded him from a critical stage of the proceedings. Despite Courtney's arguments to the contrary, the courtroom was not closed during the sidebar conferences and Courtney was undisputedly present in the courtroom at the time. Courtney argues that to be "present" means to stand beside counsel during the sidebar conferences, but he offers no authority to support the argument. Moreover, even assuming, arguendo, that the trial court improperly excluded Courtney from the sidebar conferences, he fails to establish that the alleged error was manifest because he has not shown that he was prejudiced by the process. Love, 176 Wn. App. at 920-21, is instructive. The case involved a juror challenge procedure nearly

14

identical to the one at issue here. Like Courtney, the defendant in Love challenged the procedure based on his due process right to be present. We affirmed, noting that the defendant had been present beside his attorney during the information gathering phase of voir dire and had apparent opportunity to consult with counsel and provide input on whether to challenge any of the prospective jurors. Id. at 921. We also noted that, because the defendant had succeeded in his cause challenges at the sidebar conference, "he simply [could not] show how he was prejudiced by the procedure. His due process claim therefore [was] not manifest error." Id.

Like the defendant in Love, Courtney was present in the courtroom during voir dire and, presumably, had ample opportunity to discuss the relative qualification and desirability of each juror. Defense counsel participated in the discussion regarding for cause challenges and exercised peremptory challenges at sidebar conferences following voir dire. Each of counsel's asserted challenges was successful.[4] Like the defendant in Love, Courtney cannot show that he was prejudiced by the challenge procedure in this case.

Courtney contends that the mere opportunity to consult with counsel regarding the dismissal of jurors is insufficient to cure a violation of his right to be present. He cites our Supreme Court's language in State v. Irby that "[e]ven if '[d]efense counsel had time to...consult him regarding excusing some of the jurors if they chose to do so," as the State suggests...'where...personal presence

---

[4] We also note that, although initiated by the judge, one of the cause challenges was favorable to Courtney and over the objection of the State and the other was not objected to by either party.

is necessary in point of law, the record must show the fact.'" 170 Wn.2d 874, 884, 246 P.3d 796 (2011) (quoting Lewis v. United States, 146 U.S. 370, 372, 13 S.Ct. 136, 36 L.Ed. 1011 (1892)). But Irby is distinguishable. The case involved an e-mail exchange between the trial judge and counsel, during which the parties discussed, among other things, the dismissal for cause of four jurors. Id. Our Supreme Court expressly noted that the timing of the emails made it unlikely that defense counsel consulted with Irby regarding their contents:

> As noted above, Irby was not present during this discussion because he was in his jail cell. Furthermore, because the trial judge sent his initial e-mail at 1:02 p.m., and Irby's attorneys replied at 1:53 p.m., it is unlikely that the attorneys spoke to Irby about the email in the interim.

Id.

In contrast, here, the relevant communications occurred in open court immediately following voir dire, during which Courtney was presumably seated next to his attorney at counsel table, observing questioning of prospective jurors and listening to the trial judge announce his chosen method for taking juror challenges. Under these circumstances, it is highly unlikely that Courtney did not consult with his attorney regarding possible challenges prior to the sidebar conference. Thus, the present case is unlike Irby.

Because Courtney's due process claim is not based on manifest error, he cannot pursue it for the first time in this court. Sublett, 176 Wn.2d at 78; RAP 2.5(a)(3).

## Statement of Additional Grounds

In a statement of additional grounds, Courtney challenges the sufficiency of the evidence supporting his robbery conviction. We review insufficient evidence claims for whether, when viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. State v. Yarbrough, 151 Wn. App. 66, 96, 210 P.3d 1029 (2009). Sufficiency challenges admit the truth of the State's evidence and all reasonable inferences drawn from it. Id.

To prove robbery in the second degree, the State had to establish beyond a reasonable doubt that Courtney used or threatened the use of immediate force, violence, or fear of injury and that the force or fear was used to obtain or retain possession of the property or to prevent or overcome resistance to the taking. RCW 9A.56.190, .210. Taken in the light most favorable to the State, the testimony of loss prevention officers Duval-Igarta and Engelhardt-Parales was more than sufficient to allow the jury to reasonably conclude that, while fleeing the store with two stolen liquor bottles, Courtney swung his closed fist at Duval-Igarta in an attempt to retain possession of the stolen property. This evidence is sufficient to support the challenged element of Courtney's robbery conviction.

Courtney also claims he received ineffective assistance of counsel at trial. We review this claim de novo. State v. Cross, 156 Wn.2d 580, 605, 132 P.3d 80 (2006). To establish ineffective assistance he must show that (1) counsel's performance was objectively unreasonable; and (2) the deficient performance prejudiced the defense. State v. Jeffries, 105 Wn.2d 398, 418, 717 P.2d 722,

(1986) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Courtney bears the burden of proving both prongs and failure to establish either defeats the ineffective assistance of counsel claim. Id. at 418.

With respect to the first prong, Courtney notes that trial counsel did not interview any of the loss prevention officers, police officers, or store employees involved in this case and, consequently, "could not put on any kind of meaningful defense as to what took place outside the store." Statement of additional grounds at 6. But because the extent of defense counsel's pretrial investigation concerns matters outside the record, we decline to consider the issue on direct appeal. Courtney also argues that trial counsel was deficient in failing to move for dismissal based on speedy trial violations. But there is nothing in the record to support Courtney's claims that his right to a speedy trial was violated. Absent any objectionable basis, trial counsel's alleged failure to object cannot be deemed deficient performance. Accordingly, we reject Courtney's ineffective assistance of counsel claim.

*Reversed and remanded.*

Spencer, C.J.

WE CONCUR:

Trickey, J.