RENDERED: SEPTEMBER 27, 2018
TO BE PUBLISHED

# Supreme Court of Kentucky



2016-SC-000337-MR

DATE 12/13/18 Kim Redmon, DC

WILLIAM TRUSS          APPELLANT

ON APPEAL FROM JEFFERSON CIRCUIT COURT
V.      HONORABLE JUDITH E. MCDONALD-BURKMAN, JUDGE
NO. 12-CR-001417

COMMONWEALTH OF KENTUCKY          APPELLEE

**OPINION OF THE COURT BY JUSTICE WRIGHT**

**REVERSING, VACATING, AND REMANDING**

A Jefferson Circuit Court jury convicted Appellant, William Truss, of two counts of murder. In accordance with the jury's recommendation, Truss was sentenced to life without the possibility of parole for twenty-five years. Truss now appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

Truss asserts six claims of error in his appeal: (1) the trial court improperly conducted voir dire when Truss was unable to be present, (2) the trial court erred in failing to instruct the jury on intoxication and extreme emotional disturbance, (3) the trial court erred in disallowing certain opinion testimony, (4) the Commonwealth performed improper impeachment, (5) the trial court erred in not allowing evidence about questions Truss asked after the shooting, and (6) the trial court erred when it failed to grant immunity pursuant to KRS 503.085(1). Only the first and the sixth issues need be addressed, as the court abused its discretion by proceeding with voir dire

without Truss present. For the following reasons, we reverse Truss's convictions and corresponding sentence and remand to the trial court.

## I. BACKGROUND

Truss was indicted on two counts of capital murder for shooting and killing two individuals, Menchester Bray and Derek Slade. We will discuss the events surrounding the murders below as required for our analysis.

Truss's trial commenced in March 2016 with voir dire beginning on March 4, 2016. Since this was a capital murder case, the court conducted individual questioning of the potential jurors to death qualify the jury. At the start of the voir dire proceedings on March 9, Truss's attorney informed the court that Truss had not been transported from the jail due to illness.

Truss's attorney asked for a continuance until the next day when he hoped Truss may be able to participate. The following exchange ensued between counsel and the trial judge:

| | |
|---|---|
| Judge: | We're in a real situation here. This is individual voir dire in a capital murder case. |
| Defense: | I understand your honor. |
| Judge: | And, and I would like to be able to accommodate him. Um, however, I have, uh, I don't know, 24, 50, no, I have about 30 people coming today, roughly, um, all scheduled at a particular time. Uh, [prosecutor], do you have any comments. |
| Prosecutor: | I request that we proceed. |
| Judge: | I certainly do not want this to be an issue later. Um, apparently, he's not going to feel better in an hour. Uh, and I don't know if he's going to be better |

2

tomorrow. If he has what we've all in here had, it's not quick. Any comments further?

Defense: Only that we don't know the nature of the illness. Um, but we can presume of course we've all been hacking and coughing and it might have something to do with that. But we haven't heard whether he's been to medical or whether he's been diagnosed with anything. Um, so we are unaware of the nature of the illness—

Judge: Well, he is certainly entitled to be present at every stage of the proceedings and this is an important one and he has been present. Um, his illness is unfortunate in that it's not a, a proceeding I can just delay. Uh, does anybody have any, uh, I know I'm asking off the top of your head, any authority for the court to, um, I mean, I, I, I just want to be, I don't want this to come back as the reason that there's an issue later, I really don't, no one does. Um, I—

Defense: Judge, I'm worried what the jury will think when they don't see Mr. Truss here. I think that that's really—

Judge: They can know he's ill. Um, to me that's—

Defense: Well, that, put that aside, also his right to be here, of course—

Judge: And I understand that, and he's unable to or unwilling, but unable is what the court is going with.

Defense: That's what we understand.

Judge: Um, I don't know that I have any option but to proceed because, again, uh, of, the fine-tuned timing of all this, so—

Defense: If, let me add your honor, if it's a matter of, of balancing, uh, I'm not up on the case law, I wasn't prepared to deal with this today. But, I don't think the severity of the charge or the inconvenience to the jurors rises to the level of overcoming his right to be here. I'd just like to put that on the record because I haven't done the research—

3

| Judge: | Right. |
|---|---|
| Defense: | —that would be what my gut would tell me. |
| Judge: | Right. |
| Defense: | Uh, and by asking the court for an admonition or an instruction or something along those lines, which the court might. I think be more appropriate if the court would do it at the beginning of each group after they've watched the video or something along those lines. By asking for that and the court granting that, isn't a waiver, I guess, of the, of the argument that I— |
| Judge: | Right. |
| Defense: | —that I've made to the court. |
| Judge: | And if Mr. Truss is feeling better, of course he can come at any time. The defendants aren't required to be here. Uh, I know he wants to be here, but, I mean, this was, I, I just, I don't, have the luxury to grant any motion to reassign these 30 people today because of our schedule. So, if the defense would like, I will certainly, each group will know that Mr. Truss is ill and cannot be with us today. But hopes, hope is, he'll be back Friday. And that's the big thing. He needs to be back Friday for sure. |

The court denied defense counsel's motion for a continuance and proceeded with this day of voir dire without Truss being present. On this day, the thirty-one jurors were questioned individually regarding their views on the available penalties—including death. Based on these questions, sixteen of the thirty-one jurors were excused. The remaining fifteen jurors (along with 39 other jurors remaining after two previous days of individual voir dire) returned the next day for general voir dire. The case proceeded to trial, and Truss was

4

convicted of two counts of murder and sentenced to life without parole for 25 years.

## II. ANALYSIS

### A. Voir Dire

Truss argues that, in conducting voir dire outside his presence, the trial court denied his rights pursuant to the Fourteenth Amendment to the United States Constitution, Section 11 of the Kentucky Constitution, and RCr 8.28.

On the day in question, Truss did not have a personal presence in the courtroom while the jurors were being questioned regarding the death penalty. Due to Truss's absence, he was unable to assist his counsel in evaluating the jurors. Though the potential jurors were only asked questions pertaining to the penalty phase, Truss had a constitutional right to be present and able to participate on this day of jury selection. Further, there is no indication in the record that Truss waived this right. His counsel objected to the proceeding of voir dire.

Because this alleged error impacted Truss's Fourteenth Amendment right to Due Process, we are bound by the holdings of the Supreme Court of the United States as to this federal constitutional issue.

The United States Supreme Court held in *Kentucky v. Stincer* that "[a] defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." 482 U.S. 730, 745 (1987). Further, the Court in

*Lewis v. United States* held "the defendant's 'life or liberty may depend upon the aid which, by his personal presence, he may give to counsel and to the court and triers, in the selection of jurors.'" 146 U.S. 370, 373 (1892).

We also find two United States Court of Appeals' decisions instructive. First, in *United States v. Crutcher*, 405 F.2d 239, 244 (2d Cir. 1968), the Second Circuit held "there is no way to assess the extent of the prejudice, if any, a defendant might suffer by not being able to advise his attorney during the impaneling of the jury." Furthermore, in *United States v. Gordon*, 829 F.2d 119 (D.C. Cir. 1987), the D.C. Circuit held that a defendant's complete absence from the impaneling of his jury was in violation of the defendant's rights.

In *Gordon,* the defendant remained in a holding cell throughout the entire jury selection process upon the request of his attorney. He entered the courtroom once the jury had been impaneled. Gordon was convicted and subsequently moved for a new trial alleging that his absence from the jury selection process violated his right to be present at all stages of his trial. The Court of Appeals held that Gordon had a right to be present that had not been waived and his total absence from the proceedings resulted in a reasonable possibility of prejudice. *Gordon* held that a defendant has a constitutional right to be present at voir dire as presence at jury selection had a "reasonably substantial" relation to his "opportunity to defend against the charge." *Gordon*, at 124 (citing *United States v. Gagnon*, 470 U.S. at 526 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-06 (1934))). "That . . . presence at voir dire

was substantially related to his defense is indicated by the fact that he had no opportunity "to give advi[c]e or suggestion[s] . . . to . . . his lawyers." *Gordon*, 829 F.2d at 124 (quoting *Snyder*, 291 U.S. at 106). "During voir dire, for example, 'what may be irrelevant when heard or seen by [defendant's] lawyer may tap a memory or association of the defendant's which in turn may be of some use to his defense.'" *Id.* Further, "[a] defendant's presence at jury selection is also necessary so that he may effectively exercise his peremptory challenges." *Id.*

Truss has a constitutional right to be present at jury selection. These due process rights were violated when voir dire was commenced in his absence. We hold, consistent with the holding in *Crutcher*, there is no way to assess the extent of prejudice that Truss may have endured by not being able to assist his counsel in the impaneling of the jury on this day. The court erred when it declared Truss was unable to attend and proceeded with voir dire in his absence. We must now determine if that error requires reversal.

In *Chapman v. California*, the Supreme Court of the United States held that before a federal constitutional error can be held harmless, the reviewing court must be able to declare a belief that it was harmless beyond a reasonable doubt. 386 U.S. 18, 24 (1967). Therefore, having held the trial court erred in conducting voir dire in Truss's absence, we must now determine if that error was harmless beyond a reasonable doubt.

In *Staples v. Commonwealth,* this court stated, "[h]armless error analysis applied to a constitutional error, . . . involves considering the improper evidence in the context of the entire trial and asking whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." 454 S.W.3d 803, 826-27 (Ky. 2014) (internal quotations omitted). Put differently, we have also stated that an error may not be deemed harmless beyond a reasonable doubt unless "there is no reasonable possibility that it contributed to the conviction." *Winstead v. Commonwealth,* 283 S.W.3d 678, 689 (Ky. 2009).

Here, the trial court's error does not fit within the narrow scope of harmless beyond a reasonable doubt. By being absent on the day in question, Truss was unable to assist his counsel in evaluating potential jurors. We can only speculate as to the extent that Truss would have assisted his counsel on this day of voir dire and the impressions and information that he might have gleaned which may have affected the exercise of his preemptory challenges.

As the Second Circuit noted in *Cohen v. Senkowski,* 290 F.3d 485, 489–90 (2d Cir. 2002):

> the defendant's "life or liberty may depend upon the aid which, by his personal presence, he may give to counsel and to the court and triers, in the selection of jurors." *Lewis v. United States,* 146 U.S. 370, 373, 13 S.Ct. 136, 36 L.Ed. 1011 (1892). As the Supreme Court recognized in *Snyder,* it is in the defendant's "power, if present, to give advice or suggestion or even supersede his lawyers altogether" at *voir dire.* 291 U.S. at 106, 54 S.Ct. 330.

Moreover, the Court in *Lewis* pointed out that

we must be sensible what sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another, and how necessary it is that a prisoner (when put to defend his life) should have a good opinion of his jury, the want of which might totally disconcert him, the law wills not that he should be tried by any one man against whom he has conceived a prejudice, even without being able to assign a reason for such his dislike.

146 U.S. at 376.

In the present case, Truss was harmfully deprived of this right pertaining to the thirty-one jurors that were questioned in his absence.

The Commonwealth argues that because the questions pertained only to the death qualification of the jurors on the day Truss missed and his participation would have been minimal, any violation of his rights was harmless. However, as noted, Truss had a right to be present at every critical stage of the proceeding and this Court is not apt to determine the extent of prejudice that conducting this voir dire may have had on Truss's conviction. His rights were violated even had his participation been minimal. Truss being present during group voir dire the following day does not rectify the violation of his rights—or remove any harm. He missed an entire day of observing jurors' reactions to questions dealing with his very life or death. We cannot speculate as to whether a juror's body language or mannerisms would have led him to ask for a juror to be stricken for cause, or to have used a peremptory strike.

Further, the Commonwealth cites *Soto v. Commonwealth*, 139 S.W.3d 827, 851 (Ky. 2004) asserting that Truss failed to articulate any harm that he suffered as a result of missing an entire day of individual voir dire. However,

9

Truss did argue the harm suffered: a violation of his rights by missing a critical stage of the proceeding. In *Soto*, five jurors were excused due to hardship excusals on their juror qualification forms outside the defendant's presence. Two jurors were also excused for situational bias. There, we held the error was harmless. The jurors excused in *Soto* are distinguishable from the jurors excused in the case at hand. Soto could not have contributed any additional information regarding the two jurors excused for situational bias, and the five jurors excused for hardship were within the trial judge's discretion and those excusals were not required to be made in open court or in the presence of or in consultation with any parties or their counsel. *Id.* at 852. (*citing Caudill v. Commonwealth*, 120 S.W.3d 635 (Ky. 2003)). Truss had a constitutional right to be at this day of voir dire and could have contributed to the jury-selection process in which more than half of the jurors present that day were excused.

The Commonwealth also cites *Cantrell v. Commonwealth*, 288 S.W.3d 291, 297 (Ky. 2009), in support of its contention that any error in Truss's case was harmless beyond a reasonable doubt. In that case, Cantrell arrived to the second day of trial late—but within a couple minutes of the start of a police officer's testimony. This Court held that Cantrell's absence was harmless beyond a reasonable doubt. These facts are distinguishable from the case at hand, as Cantrell was absent for a couple of minutes of witness testimony, during which the witness was merely answering background questions,

10

whereas Truss was absent from an entire day of jury selection in which sixteen jurors were excused.

We are not in the position to speculate as to the interactions Truss may have had on this day. To say that the court's error was harmless beyond a reasonable doubt would be an injustice to Truss and deprive him of his constitutional rights.

## B. Immunity

Truss argues that the trial court committed reversible error when it failed to grant immunity pursuant to KRS 503.085(1).[1] While we will not "revisit whether there was probable cause" in cases in which "a jury has already convicted the defendant—and, thus, found [his actions were] unlawful beyond a reasonable doubt" if we find no flaw with that conviction, that is not the case here. *Ragland v. Commonwealth*, 476 S.W.3d 236, 246 (Ky. 2015). In the present case, Truss "has indeed shown his conviction to be flawed due to the . . . errors discussed above." Therefore, we must "address the merits of his immunity claim, which would preclude the prosecution from going forward on remand were this Court to find error in the trial court's denial of immunity." *Id.*

---

[1] KRS 503.085(1) reads in pertinent part: "A person who uses force as permitted in KRS 503.050, 503.055, 503.070, and 503.080 is justified in using such force and is immune from criminal prosecution and civil action for the use of such force . . . ." The statutes referenced above pertain to the justifiable use of physical force against another.

In the present case, the trial court issued an order denying Truss's immunity claim. The court stated that it reviewed the discovery materials, which included an investigative letter, search warrants for the vehicle involved and the defendant, DNA analyses, autopsy results for both victims, firearm examination results, photographs, the 911 tape, the statement of Bernard Murph,[2] and Truss's statements. The trial court found that conflicting evidence existed as to whether Truss's use of deadly force was justified.

The standard of review of a denial of a defendant's motion to dismiss for immunity from prosecution under KRS 503.085 is whether the trial court had a "substantial basis" for finding probable cause to conclude that the defendant's use of force was unlawful. *Ragland*, 476 S.W.3d at 246 (*citing Commonwealth v. Lemons*, 437 S.W.3d 708, 715 (Ky.2014)). We hold the trial court had a substantial basis for denying Truss's motion for immunity. Truss, Bray, and Slade were the only individuals in the vehicle when the officers arrived, and the car had been pulled into a grassy area in an apparently intentional manner. Bray and Slade had been shot and killed, with gunshot wounds to the head (Bray suffered one gunshot wound to the head and Slade suffered one gunshot wound to the head and another to the neck), and Truss had elements associated with gunshot residue on his hands.

---

[2] Bernard Murph was a witness at trial and a friend of the parties. He was present with Truss, Bray, and Slade on the night the murders occurred.

Further, one firearm and three shell casings (all from the same firearm) were located in the vehicle. Bray and Slade's DNA was found on Truss, and Truss suffered no injuries. Immediately after the shooting, Truss called 911 and stated he had fired some shots. Notably, he did not state anything about the victims attacking him. Murph witnessed Truss, Bray, and Slade get into the vehicle. Murph further testified that Truss had been drinking, and that after the shooting Truss had told him that he had woken up in the vehicle, wasn't sure where he was, and felt in his pockets and believed his money was missing. Murph stated that Truss told him that he shot Bray and Slade.

The foregoing constitutes a substantial basis for finding probable cause and denying Truss's motion for immunity. Therefore, the trial court did not err in determining that Truss was not entitled to immunity under KRS 503.085.

### III.    CONCLUSION

For the foregoing reasons, we reverse the circuit court, vacate the associated sentence, and remand this matter to the circuit court for a new trial in which Truss is present during all critical stages of the proceeding. Having reversed on this issue and addressed Truss's immunity argument, we need not address the additional allegations of error, as they are dependent upon the facts which will be developed on retrial.

All sitting. All concur.

13

COUNSEL FOR APPELLANT:

Brandon Neil Jewell
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Jeffrey Allan Cross
Assistant Attorney General