

# IN THE
# TENTH COURT OF APPEALS

### No. 10-21-00157-CR

**MELVIN DWIGHT JOHNSON,**

                                                            **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                            **Appellee**

### From the 272nd District Court
### Brazos County, Texas
### Trial Court No. 19-03573-CRF-272

## MEMORANDUM OPINION

Melvin Dwight Johnson was convicted of two counts of aggravated sexual assault

of a child younger than 14 years of age.  *See* TEX. PENAL CODE § 22.021(a)(1)(B)(i), (iii);

(a)(2)(B).  He was sentenced to 50 years in prison for both counts.  Because the evidence

was sufficient to support the convictions and because the trial court did not abuse its

discretion in removing Johnson from the courtroom during the punishment phase of the

trial, the trial court's judgments are affirmed.

BACKGROUND

K.G. was in third grade when she, her mom, and her younger brother moved to Bryan from Calvert, Texas. Because of her mom's work schedule, Johnson, a family friend from Calvert, moved in with them and became the children's live-in babysitter. During that year, Johnson began sexually assaulting K.G. He stopped the next year when she threatened to tell her mom. She did not at that time. After K.G.'s fourth-grade year, K.G.'s mom no longer needed a babysitter, and Johnson moved back to Calvert.

When K.G. was 12 years old, her mom went out of town for a weekend. K.G. and her brother stayed with their grandmother in Calvert. When the weekend was over, as her grandmother was driving them out of Calvert back to Bryan, they saw Johnson. K.G's grandmother pulled the car up to Johnson so that the kids could say "hi" to him. K.G. turned her head and cried. The next day, K.G. would not get on the bus to go to school. She lingered in the house. Ultimately, she told her mom what Johnson had done to her. They went to the police that day.

SUFFICIENCY OF THE EVIDENCE

Johnson first challenges the sufficiency of the evidence to support his convictions. Specifically, he contends K.G.'s testimony is not credible.

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v.*

*State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

A conviction for aggravated sexual assault of a child is "supportable on the uncorroborated testimony of the victim of the sexual offense." TEX. CODE CRIM. PROC. art.

38.07(a); *Martinez v. State*, 178 S.W.3d 806, 814 (Tex. Crim. App. 2005) (noting that article 38.07 "deals with the *sufficiency* of evidence required to sustain a conviction for" certain sexual offenses) (emphasis in original). *See also Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978) (holding victim's testimony of penetration by defendant, standing alone, was sufficient). The State has no burden to produce any corroborating or physical evidence. *See Jones v. State*, 428 S.W.3d 163, 169 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *see also Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004) ("The lack of physical or forensic evidence is a factor for the jury to consider in weighing the evidence."), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006).

K.G., who was 14 years old at the time of trial, described a specific "routine" Johnson would go through with K.G. when she was in third grade which included sexual touching and digital penetration. K.G. said this routine happened about 40 times. Johnson finally stopped assaulting K.G. at the beginning of her fourth-grade year when K.G. said she was going to tell her mom what was happening.

Johnson contends that K.G.'s testimony is unbelievable because she acknowledged she did not like having Johnson as her babysitter; was unhappy when her mother had to work and K.G. was left in Johnson's care; the outcry occurred after K.G. and her brother were left with their grandmother and they had seen Johnson; the assaults could not have happened between the time she got off the bus and when her mother got home from work because those events were approximately at the same time; K.G.'s non-verbal autistic brother was in the house; and the assaults "mysteriously" stopped although Johnson continued living with the family through K.G.'s fourth-grade year.

The jury heard K.G.'s tone of voice and witnessed her demeanor when responding whether she disliked or was unhappy with her mom's work schedule or with Johnson babysitting her. They heard testimony that the times K.G. got off the bus and when her mother got home were approximate. They also heard testimony that K.G.'s brother could be easily entertained in another room, and that the assaults stopped when K.G. threatened to tell her mom what Johnson was doing.

It was the jury's duty as the sole factfinder to assess K.G.'s credibility and to resolve any conflicts in the evidence or testimony. *See Zuniga v. State*, 551 S.W.3d 729 (Tex. Crim. App. 2018). We presume that the jury resolved any conflicting inferences in favor of the verdict and defer to that resolution. *See Jackson v. Virginia*, 443 U.S. 307, 326, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). The jury determines the credibility of the witnesses and may believe all, some, or none of the testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

Accordingly, after reviewing all the evidence in the light most favorable to the jury's verdict, giving due deference to the jury's weight and credibility determinations, we conclude that, on the evidence presented, a rational trier of fact could have found the essential elements of each offense beyond a reasonable doubt.

Johnson's first issue is overruled.

**REMOVAL FROM COURTROOM**

Johnson next argues that his constitutional and statutory right to be present at trial and confront witnesses was infringed when he was excluded from the courtroom during the punishment phase of his trial.

*Law*

Under the Sixth Amendment to the United States Constitution and Article I, § 10 of the Constitution of Texas, a defendant who is threatened with loss of liberty has, within the scope of the right of confrontation, the absolute requirement that he be physically present at all phases of proceedings against him. *Miller v. State*, 692 S.W.2d 88, 90 (Tex. Crim. App. 1985) (citing *Lewis v. United States*, 146 U.S. 370, 13 S. Ct. 136, 36 L. Ed. 1011 (1892)). Article 33.03 of the Texas Code of Criminal Procedure affords an additional statutory right giving defendants the absolute right to remain in the courtroom until the jury has been selected. *See* TEX. CODE. CRIM. PROC. art. 33.03.

Unlike a defendant's statutory right under article 33.03 to remain in the courtroom until a jury has been selected, a defendant's constitutional right to be physically present in the courtroom during all phases of trial is not unlimited. A trial court may, at its discretion, remove a defendant from the courtroom for acting in a disruptive, disorderly, or disrespectful manner. *Illinois v. Allen*, 397 U.S. 337, 343-44, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970). Removal from the courtroom is warranted if, after being warned by the trial court of the possibility of removal, the defendant continues to conduct himself "in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Id*. at 343.

*Facts*

In this case, Johnson began muttering, unintelligibly,[1] during a police detective's

---

[1] These mutterings throughout the trial were loud enough for the court reporter to notice and mention them in the record.

testimony in the guilt/innocence phase of the trial. The trial court instructed Johnson several times to be quiet. The muttering continued, and the reporter inquired about an admonishment. The trial court again told Johnson to "please be quiet." He was, until he muttered again, once, during K.G.'s testimony. Johnson continued with his muttering during the State's argument on guilt/innocence. The trial court reminded Johnson twice that he had to remain quiet. After the verdict was read, and while the court and the parties were trying to decide when to start the punishment phase of the trial, Johnson again began to unintelligibly mutter. As the discussions between the attorneys and the trial court continued, Johnson ran out of the courtroom and had to be pursued by the bailiff. He was captured and placed in detention at the jail.

The next day, Johnson began to mutter unintelligibly during the State's opening statement on punishment. After the third muttering, the following occurred:

THE COURT: Mr. Johnson, you need to be quiet. If you say anything else, I'm just going to have them take you out. You have a right to be here, but you have to comply with rules.

THE DEFENDANT: You are denying me right now.

THE COURT: All right. Take him out.

BAILIFF: Don't do it.

(The defendant leaves the courtroom.)

THE COURT: For the record, he was mumbling and talking and standing up then at the end there. The deputies took him out forcefully, and he's still yelling in the hallway.

Johnson was again taken to the jail.  The bailiff's statement appears to have been directed at Johnson based upon the bailiff's perception of an action in which Johnson was about to engage.

> When counsel objected to Johnson's removal, the court stated:
>
> Your objection is overruled to his absence.  He is [sic] voluntarily absented himself from the courtroom based on his behavior.  And when I was trying to calm him down and stay in here, he got even more agitated.  So I'm going to go ahead and proceed without him.

During the State's presentation of its punishment evidence, the trial court heard that earlier in the year, Johnson lunged at a jailer, had to be restrained, and while restrained, threatened to kill the trial court judge and the district attorney.  After the State's case was presented, the trial court notified trial counsel that:

> I was going to let you know, [counsel], that I'm going to try and bring your client back but [it will] be after lunch, is what I'm thinking.  Give him time to cool off.  So, and I'm sure he was part of your plan for punishment, but I'm going to try and bring him back in case he wants to testify or in case he can maintain his composure in here.

Counsel decided that Johnson could be brought back after lunch when Johnson's sister would testify.  When, before lunch, it came time for Johnson's sister to testify, Johnson's counsel made the decision to proceed without Johnson present.

After lunch, Johnson was brought into the courtroom where the trial court warned Johnson that he could stay, as long as he behaved.  Johnson only stared at the trial court.  When Johnson was asked if he agreed with counsel's recitation that Johnson would not testify, Johnson again only stared at the trial court.  Johnson continued his muttering during the State's closing argument and during the trial court's pronouncement of

Johnson's sentence. Again, after the pronouncement of sentence, Johnson tried to leave the courtroom on his own and was stopped by the bailiff.

*Application*

The trial court gave Johnson wide latitude in his behavior during the first day of trial. Johnson interrupted the State's presentation of its case many times and even tried to escape from the courtroom. When early in the process the next day, Johnson became disruptive again during the State's case, the trial court warned Johnson he would be removed if he did not behave. This admonishment resulted in an immediate outburst from Johnson who was then removed. He was returned after lunch, only to continue with his disruptive behavior.

Our courts should not be "treated disrespectfully with impunity." *See Illinois v. Allen*, 397 U.S. 337, 346, 90 S. Ct. 1057, 1062 (1970). After reviewing the record, we cannot say that the trial court abused its discretion in removing Johnson from the courtroom. Johnson's second issue is overruled.

**CONCLUSION**

Having overruled each of Johnson's issues on appeal, we affirm the trial court's judgments.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Johnson, and
      Justice Smith
Affirmed
Opinion delivered and filed November 2, 2022
Do not publish
[CRPM]

